W. E. Allen, J.
 

 In the progress of the trial the defendants’ counsel moved to suppress the depositions of Sparks and Cope, witnesses on the part of the plaintifij taken upon commissions, for several reasons assigned at the time, none of which, howeyer, with a single exception, extended to the entire deposition of either witness. The objections therefore, with that exception, were properly overruled, although it should be con
 
 *201
 
 ceded that some parts of the depositions were objectionable, and should have been excluded as evidence. The party made his objections too broad, and the court therefore properly disallowed them. With the exception referred to, the objections were to particular interrogatories' and specific answers, and furnished no reason for suppressing the entire depositions; and, although, after taking out the objectionable answers, but little might remain which as evidence could affect the merits, it still would have been improper to exclude the whole because of objections to parts. The specific objections were to the 3d, 4th, 8th, 9th, 10th, 11th and 12th interrogatories annexed to the commission, and to the answers of the witnesses to the last. and general interrogatory, leaving five interrogatories and their answers confessedly unobjectionable.
 

 But the objections relied upon are not in my judgment tenable. The first is to several of the interrogatories, in which reference is made to a copy of a draft annexed and shown to the witnesses, who are inquired of as to their previous knowledge of the original, and of the transfer thereof. It was not an attempt to give secondary evidence of the bill, but a simple method of ■ describing the paper and calling the attention of the witnesses to it, that they might testify understandingly and intelligently in relation to it, and the negotiations and dealings of the parties concerning it. Upon the examination of the witnesses the original was produced and identified by them; and- a party is never called upon to risk the loss of valuable original papers by annexing them to a commission to be transmitted to a distant state or country for execution. The 11th interrogatory, as to the usual mode of transferring notes and bills from one bank to another, is not objectionable as calling for the answer of a witness to a question of law. The witnesses were asked as to the mode and manner, and the officer by whom indorsements on behalf of a bank were usually made; the legal effect of the indorsement was not touched by the question. By the 12th interrogatory the witnesses were not called upon to give parol evidence of a written instrument, or to determine the legal and
 
 *202
 
 proper mode of indorsing and collecting drafts, but were asked to state what the existing arrangements were for transacting that business between the two banks, of which they were respectively cashiers, and called for facts and not opinions.
 

 It is not claimed that the general interrogatory is improper. The answers of the witnesses in this case to that interrogatory are pertinent to the matters in issue, and directly concern the merits of the action. If the defendants were surprised by the testimony, and desired to- controvert or explain the facts stated, either by a further examination of the same witnesses, or otherwise, them course was to seek by a proper application to the court for an opportunity to do so. The remedy for the difficulty was not by a suppression of the whole evidence under the commission. If the answers were not pertinent in whole or in part, objections should have been taken to 'theparts not relevant. The objection pressed to the whole depositions was, that one of the attorneys for the plaintiff conversed with the witnesses prior to their examination, and at their request wrote down for them the substance of the facts in answer to the several interrogatories. It would have been better, doubtless, in view of the relation which the witnesses bore to the cause, that this had not been done; and had the facts to .which they testified been the subject of a contest and contradictory evidence, it would have been proper subject of remark to the jury; but I see no reason for suppressing the depositions, especially in the absence of any suggestion that the witnesses have been imposed upon, or that any fact has been misstated, unduly colored or concealed. Whenever undue means are employed to give shape or color to evidence taken upon commission, it will be proper upon motion to set aside the deposition and order the commission to be executed anew, or deprive the party thus abusing the process of the court of its benefit, as shall be deemed most fit. But there is no reason to.suppose that in this case the defendants would have taken any thing by a motion of that kind. There was then no error in the denial of the motion to suppress the depositions.
 

 The questions upon the merits relate, 1. ,To the parties; and
 
 *203
 
 2dly, to the existence of any cause of action growing out of the attempt to collect the bill in question. That the proper parties áre before the court appears to he well settled upon authority in this state; The liability of the defendants for the acts and omissions of the Troy City Bank and their officers and agents in and about the collection of the draft, is no longer an open question. It was definitely settled by the court for the correction of errors, in
 
 Allen
 
 v.
 
 The Merchants' Bank of New-York,
 
 (22
 
 Wend.
 
 215,) in which it was resolved “ that when a bank, broker or other money dealer receives, upon a good consideration, a note or bill for collection in the place where such bank, broker or dealer carries on business or at a distant place, the party receiving the some for collection is liable for the neglect, omission or other misconduct of the bank or agent to whom the bill or note is sent, either in'the negotiation, collection, or paying over the money, by which the money is lost, or other injury sustained by the owner of the note or bill, unless there be some agreement to the contrary, express or impliedand this doctrine was reasserted and directly approved by this court in
 
 The Montgomery County Bank
 
 v.
 
 The Albany City Bank,
 
 decided December, 1852, in this court. If a liability has been incurred by the defendants by reason of an omission of duty on the part of the bank at Troy, either in the payment of the money collected or in charging the prior parties to the bill upon its dishonor by the drawee, it is quite evident that such liability is to the plaintiff which alone can enforce it by action. To this effect is the decision of
 
 The Montgomery County Bank
 
 v.
 
 The Albany City Bank.
 
 It was there held that the plaintiff, who had transmitted a bill payable in New-York to the Albany City Bank, for collection, could not maintain an action against the Bank of the State of New-York, to which, as the correspondent and agent in Hew-York of the Albany City Bank, the latter had transmitted it for the same purpose, for an omission to charge the drawer and indorsers upon non-payment by the drawee, reversing the decision of the supreme court, holding the contrary doctrine. (8
 
 Barb.
 
 396.) Jewett, J. says, “ And if
 
 *204
 
 it be necessary or convenient for such bank (the bank receiving a bill or note for collection,) to employ some other bank or individual to collect the bill at the place of its location, or at a distant place where the bill is payable, and it does employ such other bank or individual to whom it transmits the bill for that purpose, the latter on receiving the bill and entering upon the discharge of the trust, becomes the agent of the former bank and not of the owner, and in the absence of any agreement to the contrary is answerable to it for any neglect in the discharge of its duties as such agent, whereby the former bank sustains any loss or damage
 
 f
 
 and again, “The Sew-York State Bank was the agent directly guilty of the neglect. The bank was employed to do this service by the plaintiff’s agent, the Albany City Bank, as its agent, to whom it was alone responsible for its acts and neglects, and the latter, according to the settled rule, was responsible to the plaintiff for its acts and omissions in the matter, there being no agreement to the contrary, express or implied.” The doctrine put forth in the
 
 Bank of Orleans
 
 v.
 
 Smith,
 
 (3
 
 Hill,
 
 560,) that where a note payable at a distance is deposited with a bank for collection, and the latter transmit it to another bank for the same purpose, both are to be regarded as agents for the holder, is disapproved in the same opinion.
 

 Indeed, it seems to follow necessarily from the .adjudication in
 
 Allen
 
 v.
 
 The Merchants’ Bank,
 
 that the defendant being the agent of the plaintiff is responsible to it as principal for the proper discharge of the duties of the agency. The contract of the agent respecting the business of the agency, which the law implies, is with his immediate principal, and where the relation of principal and agent is established as it is between the parties to this action by the authorities cited, the contract and consequent rights and liabilities result as necessary sequents, unless expressly provided against by agreement.
 

 Again, if, as is claimed by the defendants, tne plaintiff was not the holder of the bill of exchange, which is the subject of the controversy in this action, but was the mere agent of the holder,
 
 *205
 
 (the Bank of Wilmington and Brandywine,) still as. such agent it had the custody of the hill and was charged with a duty in regard of it, which authorized it to employ others in the business of the agency, and it necessarily follows that it might by contract provide for the faithful performance of the duties of those whom it should employ, and that as upon any other legal contract an action will lie for a breach of its provisions. The contract being lawful and the duty being such an one as the plaintiff has undertaken to perform and may properly procure to be done by others, the defendant is estopped from denying the title of the plaintiff to the bill for all the purposes of this action. Quoad its own agent, lawfully employed in the collection of the bill, the plaintiff was the holder of the bill. Had the bill been unlawfully destroyed or taken from the possession of the plaintiff, the wrongdoer could not, in an action for the injury, object to the title of the plaintiff or that the owner had not compelled it to respond. The possession and right of possession, coupled with the liability to the owner, would give an interest in the bill itself, and authorize an action in the name of the bailee. So for the non-performance of a legal contract with the bailee, he may maintain an action and recovér the legal damages resulting from such non-performance, without waiting until he shall have been compelled to respond to his principal. But in this case the plaintiff became by the arrangement with the Bank of Wilmington and Brandywine, under which it redeemed its circulating notes and honored and paid its drafts' on the -credit of its remittances for collection, by the transfer of the bill to it, the legal owners and holders thereof, and as such irrespective of any agency, entitled to all the rights of feuch owner and holder. This is in effect decided in
 
 Clark
 
 v.
 
 The Merchants’
 
 Bank, reported (2
 
 Com.
 
 380,) and decided upon a second appeal at the last term of this court. As agent under an obligation to collect the bill for the owner, the plaintiff was authorized to contract with another to perform that duty, and from the right to contract results the right to enforce the contract by action; and as the indorsee of the bill under the business arrangement existing within it, and
 
 *206
 
 its immediate indorser, the plaintiff, had the possession of the bill coupled with an interest which entitled it to make and enforce the contract with the defendants, which is the foundation of this action, or any other legal contract, either for the transfer or collection of the bill, so that in either capacity the action is properly brought by the plaintiff. Upon the other branch of the cause there is no difficulty.
 

 The parties being the proper parties to the action the cause of action was clearly established. (1.) The bill was paid by the drawee to the Troy City Bank. By the receipt of the check of Warren, and charging it to him in account and surrendering to him the draft the same was paid and satisfied.
 
 (Pratt
 
 v.
 
 Foote, decided in this court, March T.
 
 1854.) And if not paid by that transaction, after the account of the drawer of the check was made good as against the check by subsequent deposits, which the law applied to the first debit against the depositor, and which in this case was the check given in fact in payment of the bill in question, the draft was in no sense a valid
 
 or
 
 subsisting bill, but was paid and" satisfied and could not be revived by any subsequent negotiation or dealings of the parties.
 
 (Allen
 
 v.
 
 Culver,
 
 3
 
 Denio,
 
 284;
 
 Webb
 
 v.
 
 Dickinson,
 
 11
 
 Wend.
 
 62;
 
 Seymour
 
 v.
 
 Van Slyck,
 
 8
 
 Id.
 
 403.) Payment to the Troy Bank was payment to the defendant, and being shown established, their liability to the plaintiff. (2d.) If the bill was not paid, then the drawer and indorsers were discharged by the omission of the agent of the defendant to give the proper notices of the dishonor of the bill by the drawee and take the proper measures to charge them.
 

 If the drawee was not entitled to the usual days of grace upon a bill payable at sight, then it was the duty of the agent to demand payment, on the 19th of November, the bank having received it on the morning of that day, and on failure of the drawee to pay, to give the proper notices to the prior parties thereto. This, it is conceded, was not done.' If grace is allowable upon sight drafts, which is not conceded, then it should have been presented for acceptance within ¿"reasonable time,
 
 *207
 
 and in case of non-acceptance notice given to the proper parties.
 
 (Story on Bills,
 
 §§ 228, 342.
 
 Walker
 
 v.
 
 Bank of the State of New- York, Court of Appeals, March T.
 
 1854.) The bill was not accepted and no notice of non-acceptance was given.
 

 If it is claimed that the bill was accepted, or that no formal acceptance of a bill at sight was necessary, then the drawer and indorsers were discharged for two reasons. (1.) The demand on the morning of Monday, the 22d of November, was premature ; the party being entitled to three full days (if days of grace are allowed upon sight drafts,) after the presentment of the draft on Friday, the 19th. (2.) The notices were of a dishonor by non-payment, on the 19th, and were not deposited in the post office until the 22d,-too late to charge the parties upon a dishonor by non-payment on the 19th, and did not give any information of the refusal to pay on the 22d. But the breach of duty on the part of the Troy City Bank, and the consequent discharge of the drawer and indorsers, was not really controverted upon the argument, and therefore need not be more elaborately considered. The judgment of the court below was clearly right, and should be affirmed with costs.
 

 Gardiner, Ch. J. delivered an opinion in favor of affirming the judgment, on the ground, that, without deciding whether the plaintiff as a mere collecting agent could recover, the plaintiff was on the facts of this case both the legal holder of the bill and interested in its proceeds when it transmitted the same to the defendant, and therefore entitled to sustain the action.
 

 Judgment affirmed.