## P. D. GOWLING, Appellant, v. AMERICAN EXPRESS COMPANY et al., Respondents.

### Kansas City Court of Appeals, November 9, 1903.

1. **Banks and Banking:** COLLECTION AGENCY: PAYMENT: MONEY. An agent holding a check for collection has no right to receive of the bank on which it is drawn, anything but money, and if he accepts a draft his liability becomes fixed as much as if he had received the cash. (Authorities discussed.)

2. **Express Company:** COLLECTION AGENCY: LIMITING LIABILITY. A common carrier may limit his liability by contract on sufficient consideration, but when an express company undertakes the collection of commercial paper, it is subject to the law governing such business, and is liable accordingly.

Appeal from Howard Circuit Court.—*Hon. J. A. Hockaday,* Judge.

REVERSED AND REMANDED.

*T. Shackelford* and *J. H. Denny* for appellant.

(1) The court tried the case upon an erroneous theory of the law, and submitted the case upon an instruction which erroneously declared the law to the jury. Bank v. Trust Co., 149 Ill. 543; Bank v. Bank, 151 Mo.

329; Ward v. Smith, 74 U. S. 447; Bank v. Bank, 7 Bissell 193; 1 Daniel Neg. Inst. (4 Ed.), sec. 335; 2 Daniels Neg. Inst. (4 Ed.), sec. 1625; Bank v. Ainsworth, 123 Pa. St. 212; Bank v. Bank, 11 N. Y. 203; Hall v. Storrs, 7 Wis. 253; Whitney v. Essen, 99 Mass. 308.   (2)   Defendants advertised and held themselves out to the world as collectors of commercial paper; the plaintiff delivered them the check to collect, and their indorsements on the check as well as their own admissions show that they received the check for collection, and the defendants can not shield themselves from the liability and duty which the law imposes in such circumstances, by issuing to the plaintiff a receipt for the collection with terms and conditions entirely foreign to the matter in hand.   Having received the check for collection the defendants became subject to the duties and liabilities which the law imposes in such cases, and they can not limit their liability for negligence in the performance of the duties thus imposed.   Ins. Co., v. Railroad, 74 · Mo. App. 89; Ketcham v. Express Co., 52 Mo. 390; Conover v. Express Co., 40 Mo. App. 31; Nickey v. Railroad, 35 Mo. App. 86.

*R. C. Clark* and *A. W. Walker* for respondents.

(1)   Under the allegations in plaintiff's petition, and his own evidence, the instruction given on behalf of defendants was entirely proper.   The petition itself shows that plaintiff accepted the bank draft without objection and presented it for payment and the jury correctly found that both banks were solvent, that there were funds to meet the payment of the draft and that neither of the defendants had anything to do with countermanding its payment.   In the case of Bank v Bank, 151 Mo. 320,   the facts were entirely different.   (2) Even if the defendants as collecting agents had not been warranted in receiving a banker's draft for the check, the plaintiff by accepting said draft without objection,

before it was countermanded, and presenting it for payment, ratified the act of his agents and made the draft his own. 2 Daniel on Negotiable Insts. (4 Ed.), sec. 1625; Rathbun v. Citizens' Steamboat Co., 76 N. Y. 376; Trustees of Schools v. McCormack, 41 Ill. 323; Coykendall v. Constable, 99 N. Y. 313. (3) The receipt taken by plaintiff from Wells, Fargo & Company for the check expressly limits the liability of defendants to that of a forwarder, and the plaintiff not only admitted that fact but himself introduced the receipt in evidence and therefore cannot deny its conditions. If the receipt was erroneous plaintiff should have first reformed it. Shea v. Seelig, 89 Mo. App. 146.

SMITH, P. J.—This case may be stated after this fashion, to-wit: On the first day of April, 1902, the plaintiff, a resident of Beaumont, Texas, delivered to the defendant, Wells, Fargo & Company, at that place for collection and remittance, a check for $450, drawn by one S. M. Naylor on the Payne & Williams bank of Fayette, in this State. The defendant, an express company, who advertised and held itself out to the world as a collector of commercial paper, received the check for collection, giving a receipt therefor, and forwarded the same to the American Express Company, defendant at Fayette, with the following indorsement: "Pay to Am. Ex Co. for collection. A. J. Peterson, G. A. Fargo. X. K. C. Mo. Pr. P. P. S." L. W. Jacobs, the agent of the defendant American Express Company at Fayette, presented the check at the Payne & Williams bank for payment and it was honored, but instead of collecting the money on the check, he accepted and received in lieu thereof a draft for $450 drawn by said bank on the Importers and Traders National Bank of New York City, payable to himself, which he indorsed: "Pay to the order of P. D. Gowling, L. W. Jacobs, agent," and sent to the plaintiff by way of express in care of defendant Wells, Fargo & Company at Beaumont, Texas. The

plaintiff deposited this draft to his credit in the American National Bank at Beaumont, but before the draft was collected by this bank payment was stopped by a telegram sent at the instance of Naylor, the drawer of the check, to the New York bank, upon which the draft was drawn, and the Beaumont bank thereupon charged the amount back to the plaintiff and return him the draft. The plaintiff immediately after the draft was returned to him tendered it to the defendant's agent, L. W. Jacobs, at Fayette, and demanded the sum of $450, and upon the refusal of payment began this suit, his petition containing two counts: One praying damages for $450 for alleged violation of contract by defendants in failing to collect and remit the amount of the collection; and the other a count for money had and received by defendants to the use of plaintiff.

The amended answer of the defendants contained a general denial, and then sets forth the receipt given by defendant Wells, Fargo & Company upon receipt of the check for collection which they allege to be the only agreement on the part of the defendants; the answer further set up that the check was obtained by fraud and in a gambling transaction to which the plaintiff was a party, and that the plaintiff paid nothing for the check; that the defendants collected said check and sent the plaintiff a draft therefor which he accepted as full payment and satisfaction of his check and that he was thereby debarred and estopped from maintaining this action.

The plaintiff filed a reply denying the new matter set up in the defendants' amended answer, alleging a previous tender of the draft back to the defendants, and their refusal to receive it and deposited the draft with the clerk of the court for the defendants.

The cause was tried to a jury, and at the conclusion of the evidence the plaintiff requested and the court refused the following instructions:

"2.   The court instructs the jury that if they believe from the evidence that the defendant received of the plaintiff for collection the check mentioned in plaintiff's petition and introduced in evidence, and that defendants presented same for payment to Payne & Williams Bank and that the same was paid by said bank to L. W. Jacobs, agent of defendants, and that the said Jacobs instead of receiving and transmitting to plaintiff the money on same sent instead thereof a draft which was not paid when payment thereon was demanded by plaintiff, then the verdict must be for the plaintiff for the amount of said check.

"3.   The court instructs the jury that if they find from the evidence that said Payne & Williams Bank was ready and willing to pay the money on said check of plaintiff at the time it was presented at said bank and that the money was there to meet same, then it was the duty of defendants to receive only money in return for said check and that if the defendants in lieu of the money on said check sent this plaintiff a draft drawn by said bank, and that said bank afterwards stopped payment on said draft, then the verdict must be for the plaintiff for the amount of said check delivered to defendants.

"4.   The court instructs the jury that if the defendants received plaintiff's check for collection and surrendered the same to the Payne & Williams Bank in return for a draft drawn by said Payne & Williams Bank, then the defendants assumed the responsibility of said check proving good and being paid by the bank upon which it was drawn and if the same was not paid, but payment thereof refused by the bank upon which it was drawn, then the verdict must be for the plaintiff for the amount of the check."

The defendants requested and the court gave the following instruction:

"If the jury believe from the evidence that the defendant express companies transmitted the check in question to the Payne & Williams Bank at Fayette, Mis-

souri, and collected the same and transmitted the proceeds to plaintiff without delay by draft of said bank on the Importers and Traders National Bank of New York, and that said banks were solvent at the time and that the failure to honor said draft was not for want of funds in said Payne & Williams Bank or said Importers and Traders National Bank for its payment, but that payment of the same was countermanded without any act on the part of the defendants or either of them, conducing to the same, then you will find for the defendants.''

The principal ground upon which the plaintiff relies for a reversal of the judgment relates to the action of the court in the giving and refusal of instructions. The instruction for defendants which in effect told the jury that if defendants presented the Naylor check to the Payne & Williams Bank and received a draft therefor on the Importers and Traders Bank, and that on the presentation of it to the latter bank it was dishonored only because of a countermand by the former bank with which the defendants were in no way privy, then the verdict should be for defendants, was, we think, an incorrect expression of the law as applied to the facts of the case. In Morse on Banks and Banking (4 Ed.), sec. 247, it is stated: ''Except by agreement or usage a bank has no right to take anything but money in payment of paper it holds for collection. · If it takes a check it is agent of the drawer in collecting the check and not until the money is obtained has it fulfilled its duty as agent of the holder of the paper.'' In Bank v. Bank, 161 Mo. l. c. 329, it was said that ''the general rule is that an agent being authorized to receive money only, has no implied power to receive a check, or anything else except money, in payment and if he does so he assumes the risk of its payment and becomes liable to its principal for the amount of the check with interest from the date of its receipt by him.'' In Hazlett v. Bank, 132 Pa. St. l. c. 126, it was said: ''An agent holding a check

for collection has no right to receive of the bank on which it is drawn anything but the money. A check or draft on another bank is not payment." And the Supreme Court of the United States in Ward v. Smith, 7 Wall. l. c. 452, said: "That the power of a collecting agent by the general law is limited to receiving for the debt of his principal that which the law declares to be a legal tender or which is by common consent considered and treated as money, and passes as such at par, is established by all the authorities." And to the same effect is, Bank v. Newland, 97 Ky. 472; Bank v. Cummings, 89 Tenn. 620; Morris v. Bank, 106 Ala. 388; Bank v. Trust Co., 149 Ill. 343; Tootle v. Cook, 4 Col. App. 111.

"In the United States it is quite certain that a banker or other agent holding a bill or note for collection, would act at his peril in delivering it up on receipt of a check for the amount. This seems to us to be the correct doctrine, for the agent exceeds his authority in taking the check, and therefore acts at his peril. And while it may be, and as a general rule undoubtedly is, the practice of creditors, in mercantile communities, to take checks in collection of debts, and frequently to surrender other instruments on receiving them, such practice on the part of the principal, falls far short of a usage which would permit the agent to do likewise." 2 Daniels, Neg. Inst. (4 Ed.), sec., 1625. And it has been ruled that where a bank received a draft on another bank in payment of a check and surrendered the check, it made the draft its own, and its liability became fixed as much as if it had received the cash. Bank v. Ashworth, 123 Pa. St. 212; Bank v. Bank, 11 N. Y. 203. It is thus seen that the law as expressed in the plaintiff's instructions is correct, while that in the defendant's is incorrect.

The answer pleaded that the check was received from plaintiff under the terms of a certain written agreement, which is as follows:

*"Read the conditions of this receipt.*
WELLS, FARGO & CO'S EXPRESS.
"Beaumont, Texas, April 1, 1902.
"Received from P. D. Gowling, collection, valued at $450, addressed Payne & Williams Bank, Fayette, Missouri, which Wells, Fargo & Company, a corporation, hereby undertakes to forward to its agency nearest destination, but only upon the following conditions: The liability of Wells, Fargo & Company shall be at all times only that of a forwarder, and in no event shall it be liable for loss or damage to said property caused by or resulting from any act of the law or of a person acting as an officer of the law, whether with or without lawful process, warrant or authority; nor shall said company be liable for any loss or damage to said property in any event or for any cause whatever, unless said loss or damage shall be proved to have been caused by or to have resulted from the fraud or gross negligence of said company or its servants; nor in any event shall said company be held liable beyond the sum of fifty dollars, at not exceeding which sum said property is hereby valued, unless a different value is herein above stated; nor in any event shall said company be held liable for any loss of or damage to said property unless written claim be made therefor within ninety days from this date. Wells, Fargo & Company is not required to make free delivery of said property beyond its office at any station where no free delivery service is maintained by said company; nor at any station where such free delivery service is maintained, beyond the delivery limits established by said company at the date hereof, unless otherwise herein agreed, and an additional compensation paid therefor. All of the stipulations and conditions in this receipt shall extend to and inure to the benefit of each and every person and company to whom this company may entrust or deliver the above described property for transportation, storage or delivery. The party accepting this receipt thereby agrees to its conditions. Not nego-

tiable. Charges $ P. O. R. For the Company, Fraser.''

The defendants pleaded further that they have performed the said agreement on their part and were in no way liable for damages thereunder.    And it is contended that by the terms of the agreement which was embodied in the receipt given to plaintiff for the check, that defendants' liability was limited to that of forwarder, and that this being so there could be no recovery.

It was conceded by the defendants at the trial that in addition to their business of common carrier they were also engaged in that of collecting checks, notes, drafts and the like, and that they so advertised and held themselves out to the public.    No good reason can be seen why as such collectors their duties and liabilities are different from those of a bank, or other agent, engaged in the collection of commercial paper. The functions and duties which pertained to the transaction of this branch of their business were not those of a forwarder or bailee of goods and merchandise. Their duties and liabilities as collecting agents which the law imposed upon them have already been pointed out by us.  And the question is, whether they may escape these duties and liabilities by injecting into the receipt given plaintiff, stipulations by which these are entirely abrogated, or at least limited.   If they can in that way restrict or limit their liability, then it would follow that they may receive for collection a bill of exchange, draft, check or other negotiable note or instrument, no difference for how large an amount, and neglect to timely present it or collect it, or receive for it a worthless check or draft which when duly presented is not honored, or deliver it up and receive in payment therefor something other than money, or they, or their subagents, may neglect the performance of any duty enjoined upon them by law as such collecting agents, and in consequence of which the collection is not made there would be no

liability, or if so not beyond fifty dollars, and then only when guilty of gross negligence: surely this can not be so.

It is elementary law that a common carrier may by special contract protect himself against certain perils of transportation, or he may limit his liability in amount when his own negligence is not a cause or concurring cause of the loss. Such special contract, however, must be supported by an independent consideration such as a reduced rate. And while he may by special contract limit his common-law liability as insurer of the goods carried, he can not exempt himself from loss or damage occasioned by his own negligence or that of his employees. This is too well settled in this State to require the citation of the numerous cases to that effect. And it has been held that where a carrier attempts to relieve himself of liabilities for a failure to deliver goods by showing special contract limiting his liability, he must make out a case in which no negligence of his appears. Davis v. Railway, 89 Mo. 340; Nickey v. Railway, 35 Mo. App. 79. And even if the defendants were acting in their quality of common carriers in receiving plaintiff's check for collection, there is no pretense that there was any independent consideration upon which to base such special contract limiting their common-law liability.

But we are not inclined to think that the principles of the law relating to the duties and liabilities of common carriers of goods have any direct application to a case of this kind, but on the contrary, that the case must be determined by the well-established rules of commercial law, or that prescribing the duties of banks and other agents engaged in the business of collecting commercial paper. And the defendants having received of plaintiff the check for collection, they thereby subjected themselves to the duties and liabilities imposed upon them by law, and it would be unreasonable and contrary

to a sound public policy to allow them to escape those duties and liabilities by any such subterfuge as the liability-limiting agreement affords to them. No court would be justified in allowing them to shield themselves under such an agreement against the consequences of their own negligence. A contention that the defendants may assume the duties and liabilities of a collecting agent, and at the same time restrict their liability to that of an ordinary bailee or forwarder of merchandise, seems to us absurd. Many of the authorities referred to in the brief of the plaintiff's counsel support the view herein expressed.

The question of tender and ratification are not raised by the appeal and are not properly before us for review; and the same is true as respects that of the consideration for which the check was given; and we do not therefore feel at liberty to enter into a discussion of them.

There were some other rulings made by the court during the trial which were adverse to plaintiff, but these seem too unimportant, and as they are not discussed or seemingly relied on by plaintiff for a reversal of the judgment, they need not be noticed.

Because of the action of the trial court in the giving and refusing of instructions, the judgment will be reversed and cause remanded. All concur.