ISSY LANDA, Respondent, v. TRADERS BANK OF KANSAS CITY, Appellant.

Kansas City Court of Appeals, April 2, 1906.

1. **BANKS AND BANKING: Collection: Agency: Action.** Where a bank receiving for collection a draft payable in another State uses diligence and forwards the draft to a proper correspondent with proper instructions, its responsibility ends, and in case of the correspondent's default it is not liable to the owner.

2. ———: ———: ———: ———: **Contract.** But where there is an agreement by the receiving bank to collect for an agreed consideration, the bank becomes the agent of the owner and the correspondent is its agent simply, for whose conduct it is liable.

3. ———: ———: ———: ———: **Deposit.** Where the receiving bank transmits the draft to its private agent to receive the money and place the amount to the bank's credit, payment to such agent is payment to the bank who must sustain the loss, if any.

Landa v. Traders Bank of Kansas City.

4. ——: ——: ——: ——: **Consideration.** An agreement between a bank and a customer that the latter should collect the former's drafts for ten cents on the hundred dollars is valid and the court canot say that the consideration was nominal the presumption being that it was sufficient and customary.

5. ——: ——: ——: ——: **Evidence.** Though the customer's book had printed thereon certain rules with regard to collections whereby it disclaimed responsibility, such rules could not interfere with the contract between the parties, which must measure their rights and liabilities.

6. ——: ——: ——: ——: **Custom.** As a general rule the customers of a bank are bound by its customs and usages whether they know them or not; but such customs do not govern where there is a contract between the customer and the bank in conflict therewith; and where the custom was for the bank's correspondent upon collection to pass the amount to the credit of the bank and the bank then on notice passed the amount to the credit of the customer, such usage did not make the correspondent the agent of the customer but the agent of the bank.

7. ——: ——: ——: ——: **Payment.** An entry in a pass book is equivalent to receipts and so is open to explanation; but where the correspondent of a bank receives a check and surrenders the paper to be collected, he assumes the responsibility for the check's being good, and if it is not paid the bank is still obliged to pay it to its customer.

8. ——: ——: ——: ——: **Money Had and Received.** A bank forwarded its customer's draft under a special contract to its correspondent in a distant city. The correspondent presented the draft and took the drawee's check on a local bank, passed the amount to the credit of the sending bank and so notified it. That bank thereupon passed the amount to the credit of the customer. The drawee's check was refused payment when presented on the next day. The correspondent and the bank charged the amount back respectively. *Held,* an action for money had and received would lie in favor of a customer against his bank.

Appeal from Jackson Circuit Court.—*Hon. Andrew F. Evans,* Judge.

AFFIRMED.

*Gage, Ladd & Small* for appellant.

(1)   Defendant's instruction numbered 1 should have been given.   The suit was upon one cause of action which there was no proof to support, and the recovery was upon another, which was not pleaded.   This is not a mere variance or discrepancy between allegata and probata, but an entire failure of proof.   R. S. 1899, sec. 798; Murphy v. Bedford, 18 Mo. App. 279; Phleger v. Weltner, 21 Mo. App. 580; Edelen v. Strong, 34 Mo. App. 287; Trimble v. Stewart, 35 Mo. App. 537; Bank v. Umrath, 42 Mo. App. 525; Whipple v. B. & L. Assn., 55 Mo. App. 554; Tyler Estate v. Giesler, 74 Mo. App. 543; Thompson v. Irwin, 76 Mo. App. 418; Miller v. Clark, 78 Mo. App. 447; McKee v. Railway, 96 Mo. App. 671; Hecker v. Railway, 110 Mo. App. 162; Bond v. Railway, 110 Mo. App. 131; Newham v. Kenton, 79 Mo. 382; Yarnell v. Railroad, 113 Mo. 570; Chitty v. Railroad, 148 Mo. 64; Schneider v. Patton, 175 Mo. 684, 723.   (2) The defendant is not liable to the plaintiff for any mistake, neglect or default of the Chicago bank, and defendant's instruction numbered 2 should have been given. Daly v. Bank, 56 Mo. 94; Guelick v. Bank, 56 Iowa 434; Bank v. Ober, 31 Kansas 599.   (3) Defendant's refused instruction numbered 4 ought to have been given.   The plaintiff, before he left this draft with defendant for collection, had express notice of the terms upon which collections were undertaken by the defendant.   (4)   The arrangement under which the Chicago bank credited to the defendant the proceeds of paper sent to it for collection by the defendant instead of immediately remitting such proceeds to the defendant, being, under the circumstances, according to an established usage of business between banks, the defendant had a right to deal with the draft in question according to such usage; the plaintiff is bound by it whether he had knowledge of it or not; plaintiff's instruction

Landa v. Traders Bank of Kansas City.

numbered 1 ought to have been refused, and defendant's instruction numbered 3 ought to have been given. Mills v. Bank, 11 Wheat. 431; Bank v. Triplett, 1 Peters 26; Bank v. Bank, 1 Cush 177, 188; Bank v. Tube Works, 151 Mass. 413, 418; Mortgage Co. v. Tibballs, 63 Ia. 468; Howard & Co. v. Walker, 92 Tenn. 452, 455; Shalien v. Bank, 90 Tenn. 221; Davis v. Bank, 118 Cal. 600; 1 Morse on Banks, sec. 221; Bank v. Bank, 75 N. W. 843, 55 Neb. 303. (5) The defendant had the right, after having credited the amount of the draft to the plaintiff, to charge it back. Levi v. Bank, 5 Dill. III; Morse on Banks, sec. 585; Bank v. Bradley, 103 Ala. 109; Rapp v. Bank, 133 Pa. St. 406; Hendley v. Refinery Co., 106 Mo. App. 20; Milling Co. v. Kuenster, 158 Ill. 159; Quattroci Bros. v. Bank, 89 Mo. App. 500, 508-9, 510.

*I. J. Ringolsky* for respondent.

(1) The plaintiff's petition in the first count charged that defendant, for a consideration, agreed to collect the draft in dispute, with bill of lading attached, and to credit plaintiff's account with the proceeds. That the defendant collected the money, appropriated said money to its own use and failed to account to plaintiff for the money collected by it. These allegations were established conclusively by the testimony. There was no recovery on any other theory than under these allegations made in plaintiff's petition. (2) It is true in this State, where a bank receives for collection a draft payable in another state, and uses due diligence and forwards the draft to a proper correspondent at the place where the paper is made payable with proper instructions for collection, its responsibility is at an end, and in case of default by its correspondent bank it cannot be held liable to the owner, unless by some after act it makes itself responsible. Our contention is, that in the case at bar, there was a special agreement between plain-

tiff and defendant, and the draft was not sent with proper instructions for collection, and that the rule of law exempting the transmitting bank does not apply.    Daly v. Bank, 56 Mo. 94; Bank v. Bank, 71 Mo. App. 451-457; Guelich v. Bank, 56 Iowa 434; Mackersy v. Ramsey, 9 Clark & F. 818; Bank v. Bank, 75 N. W. 843.    (3)   The draft was given the Traders Bank by Landa for collection and credit, when collected; the Traders Bank to receive a commission for its services; it was not sent to the Chicago bank with the proper instructions required by our law so as to exempt it from liability, as the sending bank, under the rule of law contended for by appellants.   Under Landa's agreement the drafts were to be his property absolutely, and no usage or custom of banks could deprive him of his title.   Any usage or custom creating such a result is unreasonable and void.    (4)   We contend that under the contract existing between the Traders bank and the Chicago bank, our draft was paid.   The Chicago bank, having received the brewing company's check on another bank in payment of the draft and surrendered the draft and bill of lading attached on receipt of said check, it thereby made the brewing company's check its own, and its liability became fixed as to the Traders bank when it credited the account of the traders bank with the amount of the check, just the same and just as effectively as if it had received cash for the draft; and when the Traders bank received a credit to its account with the Chicago bank it immediately became liable to Landa, as if it had itself made a collection of the draft.   Guelich v. Bank, 56 Iowa 434; Bank. v. Bank, 107 Iowa 543; Mackerse v. Ramsey, 9 Clark & F. 818; Daly v. Bank, 56 Mo. App. 94-99; Bank v. Co., 149 Ill. 351; Bank v. Bank, 151 Mo. 320; 1 Morse on Banks and Banking (2 Ed.), sec. 252; Bank v. Ashworth, 123 Pa. St. 212; Bank v. Bank, 11 N. Y. 203; Bank v. Bank, 109 Mo. App. 665.

BROADDUS, P. J.—This suit is to recover from defendant the face value of a certain draft on his customer in Chicago for the price of a quanity of meal. The draft was drawn in the name of R. J. House & Co., but it is agreed that said company and plaintiff are one and the same.

The draft, accompained by a bill of lading for the meal, was placed in the hands of defendant bank, doing business at Kansas City, Missouri, for collection, which for a consideration agreed to collect the same. The latter in the usual course of business sent the draft with the bill of lading to its correspondent, the American Trust and Savings Bank at Chicago, with instructions to collect the same. The said draft was drawn upon the United States Brewing Company of Chicago. On the 30th day of April, 1903, the defendant received from its Chicago correspondent through the mail a communication informing it that its correspondent had collected the amount of the said draft and had credited the same to the defendant's account, which it kept with its said correspondent. Upon receiving said communication, and on the same day, defendant credited the amount of the draft, less charges for collection, to the plaintiff in his deposit account. After said credit had been made and on the same day, the defendant received from its Chicago correspondent a telegram informing defendant that its previous communication, which had advised defendant that the draft had been paid, was a mistake and that the same had not been paid, and that the amount which had been so credited to the defendant by its said correspondent had been charged back to defendant by its said correspondent, of which defendant immediately informed the plaintiff. The defendant then charged back to the plaintiff in his deposit account the amount of said draft, which had been credited to him as aforesaid.

The plaintiff was a grain dealer doing his banking business with defendant, where he kept his deposits. His

arrangement with defendant was that by which the latter was to collect his drafts for a compensation of ten cents on the one hundred dollars. It was not the habit, when plaintiff deposited his drafts with the defendant for collection, to credit him with them as cash, but they were listed by the teller in a separate book belonging to plaintiff. After collection, the drafts were credited to plaintiff's account and entered upon his pass-book as cash deposits. The draft in question was deposited with defendant for collection and entered upon plaintiff's collection book.

It was shown that defendant bank kept with the Chicago bank large deposits, upon which it drew daily, and that all items received by defendant for collection were sent to that bank. It was the custom of the latter, when it made such collections to place the proceeds to the credit of defendant. The defendant was in turn collector for the Chicago bank and, when collections were made, the defendant credited them to said Chicago bank and remitted them to the latter every ten days.

The Chicago bank presented the check in question to the drawee, the United States Brewing Company, who gave the bank its check for the full amount of the draft on the First National Bank of Chicago, whereupon it stamped the draft paid and delivered it, with the bill of lading, to the drawee. The check was returned on the next day through the clearing house marked "Payment Stopped." The First National Bank of Chicago refused payment of the check in pursuance of an order from the drawer, the said Brewing Company, and it is still unpaid. The check was not paid on account of a dispute as to the quality of the meal covered by the bill of lading. The Chicago bank endorsed the check to defendant and tendered it to plaintiff, who refused to accept it.

There was evidence of a uniform custom in Kansas City, under which, whenever a bank of Kansas City received for collection a paper in another city and it has

in such other city a correspondent bank, with which it keeps a balance and a running account, the Kansas City bank transmits the paper to such correspondent, and the amount of the paper, when collected by the latter, instead of being remitted to the Kansas City bank, is placed to the credit of the latter in its running account by the bank making the collection. Of this custom plaintiff testified he had no knowledge. It was also shown to be the usage of banks in Kansas City and elsewhere that when a depositor receives credit for an item, supposed at the time to be good as cash, but which afterwards proves not to be so, to charge back the amount to the depositor in his account. On the cover of plaintiff's pass book was printed the following: "All items received by this bank for credit or collection are taken at the depositor's risk. This bank, as agent for the depositor, will forward items not payable in Kansas City, to collection agents, who have been carefully selected. This bank, however, assumes no responsibility for neglect or default of these agents, and should they convert the proceeds of items sent them, or their returns be dishonored, the amount will be charged to the depositor, and, if possible, the dishonored paper delivered to them. All checks and drafts are credited subject to payment." The plaintiff was permitted to testify that he had no knowledge of a custom of the Kansas City banks and banks in other cities with whom they had correspondence, to send to their correspondents and get credit for collections in the foreign bank. The defendant objected to the evidence on the ground that the custom was binding on plaintiff whether he had knowledge of it or not.

The action is for money had and received; the theory of plaintiff being that defendant collected the money and failed to account for the same. The defendant contends that there was not only a variance between the *allegata* and *probata,* but an entire absence of proof. The solution of the question depends on whether the receipt by

the Chicago bank of the check, the surrender of the draft and bill of lading, was a payment.

The first question raised is, that the defendant is not liable for any mistake or neglect of the Chicago bank in dealing with the draft. "Where a bank in this State receives for collection a draft payable in another State and uses due diligence and forwards the draft to a proper correspondent at the place where the paper is made payable, with proper instructions for collection, its responsibility is at an end, and in case of default by its correspondent, it cannot be held liable to the owner, unless by some act it makes itself responsible." [Daly v. Bank, 56 Mo. 94.] And it was held in Bank v. Bank, 71 Mo. App. 451: "If a bank receives a paper for collection on a party in a distant place, the agent it employs is the agent of the owner and of the bank; and, if the bank selects a competent and reliable agent and gives proper instructions, its responsibility ceases." [Guelich v. Bank, 56 Iowa 434.] This is admitted to be the law.

But plaintiff insists that the rule does not apply to the case at bar. That here, the draft was taken not merely for transmission to another agent for collection, but under an agreement by defendant to collect the same for an agreed consideration, which made defendant plaintiff's agent. And furthermore, the usage of the defendant and the Chicago bank, that collections made by the latter for the former were to be treated as deposits to be credited to the defendant, made the Chicago bank its agent. The question was before the House of Lords in Mackersy v. Ramsays, 9 Clark & Finnelly's Rep. 818. The case stated and the conclusion as follows: "Ramsays & Co. agreed, for consideration, to apply for payment of the bill: they necessarily employed agents for that purpose who received the amount; the receipt was in law a receipt by them and subjected them to all the consequences. The appellant, with whom they agreed, cannot have anything to do with the conduct of those whom they

so employed or with the state of the account between different parties engaged in the agency." "If an agent to collect and receive payment of bills, transmits them to his own private agent to receive the money, and places the amount when received to his private credit, payment to such agent is payment to the original agent; and if there be a failure, it is the loss of the latter and not of his principal." [Taber v. Perrot, 2 Gallison Rep. 565.] And the law is so stated in Story on Agency, sec. 231.

The distinction is clear, where an agent for a consideration agrees to collect a bill of exchange and he employs another agent for the purpose, and where he simply accepts one for collection without any agreement for a consideration and employs another agent for the purpose. In the former instance, the act of the agent is the act of the original agent and not of the principal. In the latter instance, the sub-agent is the agent of the principal and not of the original agent. And it is equally clear, that where an agent accepts a bill for collection and transmits to another for collection with the authority to collect and place the proceeds to his credit, he makes such person his agent and for loss, if any, such other person is liable to the original agent and not to the principal.

It is, however, insisted that the consideration plaintiff agreed to pay the defendant was a mere nominal consideration. We are not prepared to concede that it was such. It is true the consideration was not great, but we are not to conclude for that reason it was only nominal. It was the express consideration and, in the absence of proof to the contrary, the presumption is that it was sufficient and customary. And it is further insisted that the notice printed upon plaintiff's passbook, that defendant assumed no responsibility for neglect or default of its correspondent, precludes plaintiff's right of recovery. We do not think this evidence could, in any way, effect the merits of the question, because the par-

ties were bound by their contract and not by the printed notice. Notwithstanding its presence on the book in question, the plaintiff had a right to contract otherwise, by the terms of which the plaintiff was only to be credited after collections were made less the agreed price for the service. Therefore, the rule applied in Rapp v. Bank, 136 Pa. St. 426, has no application. It was there said, l. c. 437: "It has never been supposed that, when a bank credits a depositor with the amount of a check left for collection, it may not be charged back to him in case it turns out to be worthless." And the holding is similar in Hendley v. Globe Refining Co., 106 Mo. App. 20.

The following proposition is relied on by defendant, viz: "The arrangement, under which the Chicago bank credited to defendant the proceeds of paper sent to it for collection by defendant instead of immediately remitting such proceeds to the defendant, being, under the circumstances, according to established usage of business between the banks, the defendant had a right to deal with the draft in question according to such usage; the plaintiff is bound by it whether he had acknowledge of it or not." The question was raised in Mills v. United States Bank, 11 Wheat. 431. The court stated the issue of the law as follows: "Another question is, whether the usage and custom of a bank, not to make demand of payment until the fourth day of grace, bound the defendant, unless he had personal knowledge of that usage and custom." Notwithstanding the court recognized that under the law, demand should be made on the third day of grace, yet the usage and custom of the bank governed whether the defendant had personal knowledge of it or not. And so it was held in Bank of Washington v. Triplett, 1 Peters 26. In Dorchester Bank v.Bank, 1 Cush. 188, the court held that the usage of a bank is binding on all persons dealing with the bank, whether they know of the usage or not. "One who collects commer-

cial paper through the agency of banks must be held impliedly to contract that the business may be done according to their well-known usages, so far as to permit the money collected to be mingled with funds of the collecting bank." [Bank v. Nat'l Tube Works, 151 Mass. 413.] And the case is similar in British & American Mortgage Co. v. Tibballs, 63 Iowa 468.

The authorities cited by defendant to sustain its proposition are worthy of the highest consideration. And, as a general rule, persons who deal with banks are bound by their customs and usages, whether they have knowledge of them or not. But such a custom does not govern, where the owner of the paper has a contract with it in conflict with such custom. In such case, the contract does away with the custom and the liabilities of the parties are controlled by the former. This is elementary law. Plaintiff's contract with defendant is that it would, for a consideration, collect the draft and place the amount to his credit. The custom of defendant was to send all collections to its Chicago correspondent, which according to the usage places their proceeds to defendant's credit, thus intermingling them with other funds on deposit, subject to be drawn upon not alone by the owners of the collections, but generally by defendant in its usual course of business. This, however, does not perhaps amount to a conversion, because the custom is for the Chicago bank to immediately notify defendant of the payments, who at once credits them to the owners of the paper. The custom, under the contract, would not have the effect of making the Chicago bank plaintiff's agent, but on the contrary the agent of defendant.

But it is insisted that giving of the check, which was afterwards dishonored, was not a payment. If this be true, the defendant had a right to charge back to plaintiff the amount. [Hendley v. Globe Refining Co., 106 Mo. App. 20.] The entry of a credit in a pass book to the credit of a depositor is in the nature of a receipt and

is prima facie evidence, but open to explanation. [Quattrochi Bros. v. Bank, 89 Mo. App. 500.] These authorities do not go to the question under consideration. In Bank v. Bank, 151 Mo. 321, it is held: "A bank to which another bank has sent a draft for collection being authorized to receive money only, has no implied power to receive a check or anything else except money in payment, and if it does so, it assumes the risk of its payment, and becomes liable to the bank sending the draft for the amount of the check with interest from date. If a bank takes the check of the party who is bound to pay the paper, and thereupon surrenders the paper to him, it assumes the responsibility for the check proving good. If it is not paid, the bank is still obliged to pay the amount to the person from whom it received the paper." [1 Morse on Banks & Banking, sec. 252; Bank v. Ashworth, 123 Pa. St. 212; Commercial Bank v. Union Bank, 11 N. Y. 203; Gowling v. Express Co., 102 Mo. App. 366.] "The conceded rule of law is that if a bank receives a draft for collection and takes in payment a check from the party bound to pay such draft, and surrenders the same to him, such collecting bank is liable to its principal for the amount of the check, as an agent authorized to receive money has no implied power to receive a check in payment." [Bank v. Bank, 109 Mo. App. 665.] "Where a bank receives a draft on another bank in payment of a check and surrendered the check, it made the draft its own, and its liability became fixed as much as if it had received the cash." [Bank v. Ashworth, supra; Bank v. Bank, 11 N. Y. supra.]

Under the authorities, the defendant bank properly gave plaintiff credit for the amount of the draft and its action aftewards, in charging the amount back to plaintiff, was unauthorizrd and futile. Consequently, defendant stands charged with the amount to plaintiff's credit; therefore, his suit was properly brought for money had and received. And there was no variance or

failure of proof. What has been said, in effect, disposes of the questions raised as to the admission of evidence and the giving and refusal of instructions.

Affirmed. All concur.