Pratt *v.* Foote.

## PRATT *vs.* FOOTE.

The cashier of a bank received from F., the maker of a note holden by the bank, payable on the 25th of November thereafter, the check of S. upon the bank, for the amount of the note, dated on the day when the note was payable, upon the understanding that if, when the check became due, it was made good, it would pay the note. But there was no agreement to receive the check as an absolute payment of the note. On the day the note fell due S.'s account at the bank was largely overdrawn. Between the 20th and 24th of November, large sums were deposited to the credit of S., but his account still remained overdrawn. On the 25th of November F.'s note was entered in the books of the bank as having been paid, &c. S.'s check was also charged to his account. In December S. failed, and F., on being informed at the bank that neither the note nor check had been paid, and that S.'s check had not been made good, gave a new note for the debt. *Held,* that a recovery could be had upon such note, by the bank, notwithstanding the entries in its books.

*Held also,* that in the absence of other evidence, the entries in the books of the bank would furnish controlling, but not conclusive, evidence that the note had been paid. But that, whether or not the bank agreed to receive S.'s check as payment, was a question of fact, to be decided at the circuit; and it having been found that there was no agreement to receive the check as an absolute payment of the note, such decision was held conclusive.

THIS action was tried before Mr. Justice Wright, at the Greene circuit, in June, 1850, without a jury. The plaintiff claimed to recover the amount of a promissory note made by the defendant, dated the 9th day of December, 1846, and payable to the order of the plaintiff, six months after date, for $1015,89 with interest.

Upon the trial, the following facts appeared: Sometime in the autumn of the year 1846, the defendant had borrowed of one Samuel Scudder $1000, for which he gave him his note, payable at the Prattsville Bank, of which the plaintiff was the sole owner, on the 20th of November. Scudder indorsed this note, and procured it to be discounted by the Prattsville Bank. The defendant, being prepared to pay the note before it became due, gave the money to Scudder, and received from him his check upon the Prattsville Bank, dated the same day on which the note was payable. A few days before the note became due, the defendant called at the bank with Scudder's check, and proposed to exchange it for his note. This proposition was declined, but the cashier told the defendant he might indorse the check and leave it, and if, when it became due, it was made good, it would pay the note, the check being for the same amount as the note. The check was left upon these terms. Neither the check nor the note was protested. On the day they became due, Scudder's account at the bank was largely overdrawn. Between the 20th and the 24th of November, several thousand dollars were entered to his credit, but his account still remained overdrawn to the amount of more than $2000. On the 25th of November the defendant's note was entered in the books of the bank as having been paid. All the entries usually made upon the payment of a discounted note, were made on that day. Scudder's check was also charged to his account. Early in December Scudder failed, after which the defendant called at the bank and inquired if the note or check had been paid. He was told that neither had been paid, and that Scudder's account had not been made good. An interview was then had between the plaintiff and the defendant, which resulted in the giving of the note upon which this suit was brought. At the time the note was given, the defendant had no

knowledge of the entries which had been made in the books of the bank, in relation to the payment of his note. Upon giving the new note the first note and the check were delivered up to the defendant. Upon these facts, the court rendered judgment in favor of the plaintiff, for the amount of the note, with interest. From this judgment the defendant appealed.

*R. W. Peckham,* for the plaintiff.

*Robert Parker,* for the defendant.

*By the Court,* HARRIS, J. On the 20th of November, 1846, the defendant owed the Prattsville Bank the amount of the note, for which that in suit was given. Nothing had then been done to preclude the bank from enforcing its payment. Unless something occurred between that date and the 9th of December, when the new note was given, which so changed the relation of the parties as to furnish the defendant with a valid defense to the payment of the first note, it constituted a good consideration for the note in suit. It is not pretended that it was paid. There was no interview between the parties during that interval. Scudder's check had not been "made good." In short, the state of things, in reference to the defendant's indebtedness, had in no respect been changed, except by the entries made in the books of the bank. The question thus presents itself, whether these entries operated to extinguish the debt.

That it was the intention of the plaintiff's agents, who had the management of the bank where these entries were made, to take Scudder as the debtor of the bank instead of the defendant, can not be doubted. The deposits which had been made by Scudder, though not equal in amount to his overdrafts, had, it seems, satisfied the officers of the bank that his check might safely be received. In anticipation of its payment, therefore, the transaction was closed upon the books of the bank, in the same manner as if a deposit sufficient to meet the check had already been made. Had the defendant then called for his note, it would, undoubtedly, have been given up to him. But before

---

Pratt *v.* Foote.

---

he did, in fact, call, Scudder had failed, and it had become certain that the check would not be " made good." Under the circumstances, was the plaintiff concluded by the entries which had been made, showing on their face that the check had been received in satisfaction of the note?

If the entries in the books of the bank had been made in pursuance of an agreement between the parties, there can be no doubt that the plaintiff would have been concluded. Nor do I doubt that the entries themselves, unexplained, would be sufficient evidence of an agreement to accept the check in satisfaction of the note. But when it appears, as it does in this case, that when the entries were made there had, in fact, been no such agreement between the parties, I do not see how the entries can be regarded as establishing such an agreement. It certainly would have been fortunate for the defendant if he had happened to call at the bank at the time when its officers were willing to make the exchange. Had he done so, an agreement might undoubtedly have been made like that of which the entries now furnish *prima facie*, but not conclusive evidence. But, not having called, and no agreement having been made to exchange one security for the other, I can not see why the officers of the bank were not at liberty to change their minds, notwithstanding the entries they had made in their own books.

*Olcott* v. *Rathbone*, (5 *Wend.* 490,) was a case very similar in its facts to that under consideration. The Mechanic's and Farmer's Bank held a note made by J. H. Rathbone, and indorsed by Samuel Rathbone. When the note was about falling due, the bank accepted, of an agent of the parties to the note, a new note for a part of the amount, and the check of Samuel Rathbone, the indorser, upon a bank in New-York, for the balance, and delivered up the first note. The check was not paid, and an action was brought against the maker of the note, which had been delivered up. It was held that the action might be maintained. Marcy, J. in delivering the opinion of the court, said, " the acceptance of the check was not a payment on the note, unless it was expressly agreed to be accepted as such, or the circumstances clearly show that such was the understanding

of the parties. Nothing is considered as an actual payment, which is not in truth such, unless there be an express agreement that something short of a payment shall be taken in lieu of it." And again he says "the mere giving up of the note is no satisfaction of it. It is to be regarded as matter of evidence to show the nature of the transaction, and the intention of the parties." (*See also N. York State Bank* v. *Fletcher,* 5 *Wend.* 85; *Tobey* v. *Barber,* 5 *John.* 68; *Elwood* v. *Diefendorf,* 5 *Barb.* 408; *Van Eps* v. *Dillaye,* 6 *Id.* 244; *Muldon* v. *Whitlock,* 1 *Cowen,* 290.)

I agree with the learned judge who tried this cause, that in the absence of other evidence the entries in the books would furnish controlling evidence that the note had been paid. But these entries are not conclusive, and, when taken in connection with all the other facts in the case, I think they do not sustain the position upon which the defendant relies, that the check was received as an actual payment of the note, or in lieu of such payment.

But again, whether or not the bank agreed to receive the check as payment, and to take the risk of its being made good, was a question of fact to be decided at the circuit. It was so decided, and the decision was against the defendant. The judge, whose province it was to decide matters of fact as well as law, has found that there was no agreement to receive the check as an absolute payment of the note. In this conclusion he was fully warranted by the evidence. This decision being upon a question of fact, is conclusive. It must be assumed that there was, in fact, no agreement to take the check as payment of the note, whether it should be made good or not. (*See Porter* v. *Talcott,* 1 *Cowen,* 384; *Johnson* v. *Weed,* 9 *John.* 309; *Frisbee* v. *Larned,* 21 *Wend.* 450; *Waydell* v. *Luer,* 3 *Denio,* 410.)

Nor can I perceive that the plaintiff was, in any respect, chargeable with *laches.* The check was neither left for collection, nor as collateral security for the note. It was merely deposited with the cashier, in anticipation of its payment, and upon an agreement that when paid, the proceeds should be applied to the satisfaction of the note. Under these circumstances

I can not see upon what principle it can be contended that the bank was bound either to protest the check or apprise the defendant that it had not been paid. No such obligation had been assumed. But had it been otherwise, the defendant, when he gave the note in suit, was acquainted with all the facts. He knew that the check had not been paid or protested. The only fact of which he was ignorant, was that the officers of the bank had made entries in the books evincing an intention to do, what they had never agreed to do; and of the concealment of which, therefore, I think the defendant had no right to complain. These entries were only important as furnishing evidence of an agreement; and from the whole transaction, it appears that no such agreement was ever in fact made. The defendant has no right, therefore, to insist that he was induced to give the new note by a fraudulent concealment of facts which he had a right to know. And yet, to this extent he must go, before he can avoid the note upon this ground. In every view I have been able to take of this case, the result is the same. The defendant confiding in the integrity and ability of Scudder, intrusted him with the money with which he had designed to pay his debt to the plaintiff's bank. The same confidence induced him to rest unconcerned, until after the failure of Scudder, never doubting, it may be supposed, that the check had been, or would be, made good. Neither the plaintiff nor any of his officers, in any way, contributed to this misplaced confidence. The defendant, therefore, and not the plaintiff, should bear the loss. The judgment should be affirmed.

[ALBANY GENERAL TERM, December 1, 1851. *Harris, Parker* and *Wright,* Justices.]