BROAD AND MARKET NATIONAL BANK OF NEWARK, Respondent, *v.* NEW YORK AND EASTERN REALTY COMPANY, Appellant, Impleaded with ˍBENJAMIN SICKLICK, Defendant.

(Supreme Court, Appellate Term, Second Department, December, 1917.)

**Negotiable instruments — action on promissory note — corporations — bills, notes and checks — plaintiff not entitled to recover upon original or renewal note — appeal.**

A corporation made its promissory note for $750 to the order of its president which he indorsed as an individual and dis-. counted at the plaintiff bank where he had a personal account,.

and at maturity of the note he gave plaintiff his personal check for $50 together with a similar note for $700 made by the corporation and indorsed by him, the first note being thereupon surrendered after being stamped "paid" by plaintiff. The $700 note at maturity was stamped "paid" and surrendered by plaintiff which in place of it received a third note of similar tenor for $700 and when it matured the payee gave his personal check for $700 drawn to plaintiff's order and its president, who authorized the acceptance thereof in payment of said note which was thereupon stamped "paid" and surrendered to plaintiff, charged the $700 check which was stamped "paid" against the account of the drawer deducting the amount thereof from his account on the books of the bank. In an action on the original note, in which it was sought to hold the maker liable, the plaintiff contended that the $700 check though charged against the drawer's account was never paid because a certain check for $925 deposited in his personal account three days before the maturity of the note was never collected and was, therefore, erroneously credited to his account, and that plaintiff erred in accepting the same in payment for and surrendering the third note and in charging the payee's personal account with the check for $700 and marking it "paid." *Held,* that such contention was untenable, that plaintiff was not entitled to recover upon the original note nor upon either of the two renewal notes; that its remedy was solely against its depositor upon the unpaid $700 check.

APPEAL by defendant New York and Eastern Realty Company from a judgment of the Municipal Court of the city of New York, borough of Brooklyn, third district, rendered May 5, 1917, in favor of plaintiff for $767.32, after a trial by the court without a jury.

Alexander Kahn, for appellant.

Herbert H. Gibbs and Arthur J. Carleton, for respondent.

BENEDICT, J.   The defendant the New York and Eastern Realty Company appeals from a judgment

rendered against it in favor of the plaintiff for the total sum of $767.32, principal, interest and costs. The judgment is clearly erroneous. Only a question of law is presented. The facts, which were admitted, were as follows: On January 25, 1916, Benjamin Sicklick, who was the president of the appellant corporation, with its authority, made its promissory note to his individual order for $750 due in four months from date. This note he indorsed as an individual and discounted at the plaintiff bank where he had a personal account. The maker of the note was a corporation transacting business in Brooklyn, and Sicklick, its president, was engaged in a different kind of business in Newark, and kept his personal account in the plaintiff bank in that city. This is the note that was sued on. At its maturity Sicklick gave to the plaintiff his own check for $50 together with another similar note for $700 made by the appellant and indorsed by him, the first note being thereupon surrendered after it had been stamped "paid" by the plaintiff. The note for $700 was due in three months and at maturity thereof it was also stamped "paid" and surrendered by the plaintiff, which in place of it received a third note of similar tenor for $700 due on November 27, 1916. When the third and last note fell due Sicklick gave to the note teller of the plaintiff bank his personal check for $700 drawn to the plaintiff's order on his personal account with the plaintiff. The note teller took this check to Mr. Williams, plaintiff's president, and the latter authorized the acceptance of the check in payment of the note, which was thereupon canceled, stamped or punched "paid" and surrendered to Sicklick. Mr. Williams testified that he accepted the check of Sicklick in payment of the note and surrendered the note to Sicklick and then charged the check against the account of Sicklick, deducting

that sum from his account on the books of the bank. The check was also stamped or punched " paid " on November 28, 1916. The plaintiff's contention is, that notwithstanding these facts the appellant is liable as the maker of the original note because of the fact that Sicklick's check for $700, although charged against his account, was never in fact paid because a certain check for $925 drawn on a bank in Bangor, Penn., and deposited in Sicklick's personal account with the plaintiff three days before the maturity of the last note of the series, was never collected. It was inferred that without that deposit being made good Sicklick's personal account did not have sufficient funds to satisfy his check or draft against it for $700. In other words, the plaintiff contends that the check for $925 was an uncollected asset erroneously credited to Sicklick's account, and that the plaintiff erred in accepting Sicklick's check on itself for $700 in payment for and surrendering the last note of the series and in charging Sicklick's personal account with the check for $700 upon its books and marking the check " paid."

Section 200 of the Negotiable Instruments Law provides as follows:

" Section 200. *Instrument; how discharged.* A negotiable instrument is discharged: " 3. By the intentional cancellation thereof by the holder."

It is true that the mere stamping of a negotiable instrument with the word " paid," or the cancellation of it in any other way, is not conclusive evidence of its discharge; for the reason that such cancellation may have been done through error or mistake. *Scott* v. *Betts,* Lalor's Sup. 363, and note; *Watervliet Bank* v. *White,* 1 Den. 608; *Irving Bank* v. *Wctherald,* 36 N. Y. 335.

Section 204 of the Negotiable Instruments Law provides that: " A cancellation made unintentionally, or

under a mistake, or without the authority of the holder, is inoperative; but where an instrument or any signature thereon appears to have been canceled the burden of proof lies on the party who alleges that the cancellation was made unintentionally, or under a mistake or without authority.''

In the present case, however, the cancellation of the note was not unintentional nor the result of a mistake. It is not claimed nor shown that there was any fraud or deceit on the part of Sicklick practiced upon the bank in obtaining the cancellation and surrender of the notes, or any of them, and it was entirely competent for the bank to accept the check of its depositor in payment of the last note made by the appellant. If payment in such manner was accepted by it, the maker of the note was discharged. The evidence clearly establishes that fact. There was no conflicting evidence upon which the trial justice could have reached any different conclusion. Had there been, a different result of the appeal would necessarily follow.

Although I have not found any case in the courts of this state precisely similar to the instant case the authorities to which I shall refer seem to me to be controlling upon the facts in this case.

In *Pratt* v. *Foote,* 12 Barb. 209, the facts were as follows: The cashier of a bank received from Foote, the maker of a note holden by the bank, payable on the twenty-fifth of November thereafter, the check of Scudder, the indorser, for the amount of the note, dated on the day when the note was payable, upon the understanding that if, when the check became due, it was made good it would pay the note; but there was no agreement to receive the check as an absolute payment of the note. On the day the note fell due Scudder's account at the bank was largely overdrawn. Between the twentieth and twenty-fourth of November large

sums were deposited to the credit of Scudder, but his account still remained overdrawn. On the twenty-fifth of November Foote's note was entered in the books of the bank as having been paid, etc. Scudder's check was also charged to his account. In December Scudder failed, and Foote on being informed at the bank that neither the note nor check had been paid, and that Scudder's check had not been made good, gave a new note for the debt. It appeared that at the time the note sued on was given Foote had no knowledge of the entries which had been made in the books of the bank in relation to the payment of his note. Upon giving the new note the first note and the check were delivered up to him. Upon these facts Mr. Justice Wright, at the Circuit without a jury, rendered judgment in favor of the plaintiff for the amount of the note with interest. From that judgment the defendant appealed, and the General Term affirmed the judgment, Mr. Justice Harris writing the opinion. In the course of the opinion Mr. Justice Harris made this statement: " I agree with the learned judge who tried this cause, that in the absence of other evidence the entries in the books would furnish controlling evidence that the note had been paid. But these entries are not conclusive, and, when taken in connection with all the other facts in the case, I think they do not sustain the position upon which the defendant relies, that the check was received as an actual payment of the note, or in lieu of such payment."

And he then discussed the point that the question of acceptance was a question of fact to be decided at the Circuit, and it having been decided against the defendant the conclusion of the trial judge was fully warranted by the evidence. Upon appeal to the Court of Appeals this judgment was unanimously reversed. See 9 N. Y. 463; 10 id. 599. It was held by the court

that where there is no conflict or uncertainty of evidence the conclusion to be drawn from the facts proved is a question of law; and the court held that the entries upon the books of the bank were of precisely the same effect as if the money was first paid to the payee of the check and instantly repaid to the bank. Judge Selden, writing for the court, said: " The real question in this case is not, as I conceive, whether an agreement was proved between the plaintiff and defendant, that the former would accept the check of Scudder in satisfaction of the defendant's note; but it is whether what was undeniably said and done did not amount to an actual payment of the first note. There are two distinctions which it is indispensable to make in order to arrive at a just conclusion upon this point.

" In the first place, it is necessary to discriminate between the acceptance by a creditor from his debtor of a new security or obligation for an old debt, and the acceptance by a bank of a check drawn upon itself in payment of a note. The transactions are entirely different. The former is the mere substitution of one executory agreement or obligation to pay for another. In such a case there is no extinguishment of the precedent debt, unless there is an express agreement to accept the new obligation or security as a satisfaction of the old. One executory agreement is not a satisfaction of another unless by virtue of some contract between the parties; and this contract cannot be inferred from the mere acceptance of the new security, but must be proved by evidence *aliunde*. But when a bank receives upon a debt a check drawn upon itself by one of its customers, and charges it in account, it thereby admits that it has funds of the drawer sufficient to meet the check; and the acceptance is *per se* an appropriation of those funds to the payment of the check. A transaction of the former kind operates only

by way of accord and satisfaction, and must be pleaded as such; while one of the latter sort operates directly as a payment of the debt.   *   *   *

"But in addition to this distinction, it is necessary further to discriminate between an executory agreement on the part of the bank to accept the check at a future time, and an actual acceptance of it *in præsenti*. If the defendant relied exclusively upon the agreement made at the time the check was deposited with the cashier, as binding the bank to accept the check, it would of course be incumbent upon him to show the conditions performed; that is, that the account of Scudder, or at least the check, had been made good.   *   *   *

"But when the bank upon which a check is drawn accepts it upon its own debt, the same act of acceptance pays the check to the payee and the debt to the bank. Instead of paying the money upon the check, the bank cancels the debt. It is the same in effect as if the money was first paid to the payee of the check, and instantly repaid to the bank. There can be no necessity in such a case for showing an express agreement to accept the check in payment. The transaction is *per se* a payment. So far as any agreement is necessary it arises by implication from the acts done."

A concurring opinion by Judge Johnson in the same case is found reported in 10 N. Y. (1st ed.) 599. He says (p. 601): "Scudder's request to them to pay money on his account was one which, under the circumstances, they were at liberty either to reject or accede to, but having acceded to it they were not afterwards at liberty to recall their act. It seems to me that the payment of Scudder's check by charging him with it in account, was as complete a payment as if the money had been handed across the counter to Foote and by him had been handed back again in payment of his

note. (*Levy* v. *Bank United States,* 4 Dall. 234; 1 Binn. 27; *Bolton* v. *Richards,* 6 T. R. 138, 143.) ''

In the case of *Crocker* v. *Whitney,* 71 N. Y., the Court of Appeals, per Andrews, J., said under somewhat similar circumstances (at p. 165): '' The transaction does not differ in legal effect from what it would have been, if Whitney, having funds in the bank, had, as each note matured, drawn his check upon the bank for the amount, and delivered it to the bank, and the bank had received it and charged it to his account, and then surrendered the note. * * * In this case there was, by force of the transaction and the manner of keeping and dealing with this account, an appropriation of the credits *pro tanto,* to pay the maturing notes, by the consent of both debtor and creditor; and this, in law, was payment. The consent is inferable from the manner in which the business was conducted.''

It is true that this case was reversed in the Supreme Court of the United States (see 103 U. S. 99), but the reversal was upon another point.

In *Mayer* v. *Heidelbach,* 123 N. Y. 332, Judge Finch referred at some length to the decision in *Pratt* v. *Foote, supra,* which was followed in *Commercial Bank* v. *Union Bank,* 11 N. Y. 203, and a line of subsequent cases which more or less have been controlled by it; and he said (p. 341): '' I do not find that the doctrine of *Pratt* v. *Foote* has ever been questioned or over-ruled. The payment in that case was held to be absolute and not conditional. The check was tendered in payment of the note and accepted as such, and the transaction in that manner closed. * * *

'' In view of the customary methods which obtain between banks and their depositors, the inference of actual payment and extinguishment of the debt where the check is accepted, charged in account, cancelled upon the file iron, and filed as a voucher, is proper to be

drawn. It seems to be not even essential to be able to say that the debt extinguished could not be revived under any form of remedy."

In *Baldwins Bank* v. *Smith*, 215 N. Y. 76, 83, the Court of Appeals, per Miller, J., said: " If they had sent a check drawn on the bank to pay the note, the acceptance of it would have been *per se* an appropriation of the funds of the drawer, or to be accurate, of the funds subject to the drawer's order, to the payment of the note. (*Pratt* v. *Foote*, 9 N. Y. 463; *Commercial Bank of Penn.* v. *Union Bank of N. Y.*, 11 N. Y. 203; *Oddie* v. *National City Bank of New York*, 45 N. Y. 735.) "

There are, it is true, remarks in some of the opinions which have been written since *Pratt* v. *Foote* was decided which appear to limit its doctrine so that if it subsequently appeared that a check given in payment of a note was itself not paid the note would be revived. I think that these decisions are not applicable to a case where the check is drawn by a depositor to the order of his bank in making such payment. If Sicklick had given a check drawn upon some other bank than the plaintiff in payment of the note made by the appellant then the rule would have been different, unless there was proof that the bank accepted the check in payment. Judge Miller says in *Baldwins Bank* v. *Smith, supra*: " That mere bookkeeping entries, or even the cancellation and surrender of the paper, is but evidence of, and does not constitute, payment is established by the cases holding that, where payment is made by a draft or check which is not paid, the paper can be reclaimed and an action maintained upon it."

He cites in support of that proposition the case of *Burkhalter* v. *Second National Bank*, 42 N. Y. 538, and cases cited. But by reference to the cited case it clearly appears that that proposition only stands in

Appellate Term, Second Department, December, 1917.   [Vol. 102.

the absence of an agreement that the check should be received as payment. The court, per Earl, Ch. J., expressly stated that there was no agreement to receive the check in payment. It was taken by the plaintiffs in the usual course of business.

In the present case I am of opinion that the plaintiff is not entitled to recover upon the note nor upon either of the two renewal notes made by the appellant, and that its remedy is solely against its depositor upon his unpaid check.

I therefore recommend that the judgment be reversed, with costs, and the case remitted to the Municipal Court, to be there dismissed against the appellant.

CLARK and CALLAGHAN, JJ., concur.

Judgment reversed, with costs.