CARNEGIE TRUST COMPANY, Appellant, v. FIRST NATIONAL
    BANK OF THE CITY OF NEW YORK, Respondent.

Bills, notes and checks — certification of check — discharge of
drawer thereby — liabilities of bank making certification.

Upon certification of a check, at the request of the holder, the
drawer is discharged from liability since the certification is equiva-
lent to an acceptance (Neg. Inst. Law, §§ 323, 324; Cons. Laws, ch.
38). The bank making the certification thereby engages that it will
pay the check according to the tenor of the acceptance to its lawful
holder, and may not resist the enforcement of its contract in order to
make a set-off available to its depositor.

*Carnegie Trust Co.* v. *First Nat. Bank*, 156 App. Div. 712,
reversed.

(Argued December 1, 1914; decided January 5, 1915.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the first judicial department,
entered June 2, 1913, upon an order reversing a judg-
ment in favor of plaintiff entered upon a verdict and
directing a dismissal of the complaint.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Joseph A. Kellogg, Frank M. Patterson, Frederick
Mellor* and *Norman M. Behr* for appellant. The certifi-
cation of the check by defendant constituted a new and
valid contract between plaintiff and defendant by which
the defendant became indebted to the plaintiff to the
amount of the check, and the drawer of the check was
discharged. (*Meuer* v. *Phœnix National Bank*, 94 App.
Div. 331; 183 N. Y. 511; *First Nat. Bank of Jersey City*
v. *Leach*, 52 N. Y. 350; *Cooke* v. *State Nat. Bank*, 52
N. Y. 96; *People* v. *St. Nicholas Bank*, 77 Hun, 159;
*Willets* v. *Phœnix Bank*, 2 Duer, 121; Morse on Banks
& Banking, §§ 414, 418; *Mead* v. *Merchants' Bank*, 25
N. Y. 143; *Farmers & Mechanics' Bank* v. *Butchers &
Drovers' Bank*, 16 N. Y. 125, 128.) There was no mis-

take as to any material fact which would furnish equitable grounds for rescinding the contract of certification. (*Southwick* v. *Bank*, 84 N. Y. 420; *Dambmann* v. *Schulting*, 75 N. Y. 55; *Whiting* v. *City Bank*, 77 N. Y. 363; *Franklin Bank* v. *Raymond*, 3 Wend. 69; *American Nat. Bank* v. *Miller*, 229 U. S. 517; *Matter of Northrup*, 159 Fed. Rep. 686.) The German National Bank was not entitled to offset the amount of the check against the indebtedness due from plaintiff to it. (*Dickerson* v. *Wason*, 47 N. Y. 439; *Nat. Park Bank* v. *Seaboard Bank*, 114 N. Y. 28; *Evansville Bank* v. *G. A. Bank*, 155 U. S. 556; *People* v. *Bank of Dansville*, 39 Hun, 187; *Laporte* v. *Carpenter*, 91 Hun, 76; 154 N. Y. 757; *People* v. *City Bank of Rochester*, 96 N. Y. 32; *Boone County Bank* v. *Latimer*, 67 Fed. Rep. 27; *Wallace* v. *Stone*, 107 Mich. 109; *Libby* v. *Hopkins*, 104 U. S. 303; *Matter of Northrup*, 159 Fed. Rep. 686; *Western Tie & Lumber Co.* v. *Brown*, 196 U. S. 502.) Defendant cannot assert as a defense to this action any rights or claims of the German National Bank growing out of the relations between that bank and plaintiff to which defendant was not a party. (*Corn Exchange Bank* v. *Farmers' Nat. Bank*, 118 N. Y. 443; *Aubery* v. *Fiske*, 36 N. Y. 47; *Hicks* v. *Sheppard*, 4 Lans. 335; *Hays* v. *Hathorn*, 74 N. Y. 486; *Castle* v. *Corn Exchange Bank*, 148 N. Y. 122; *McKay* v. *Draper*, 27 N. Y. 256; *City Bank* v. *Perkins*, 39 N. Y. 554; *Allen* v. *Brown*, 44 N. Y. 228; *Eaton* v. *Alger*, 47 N. Y. 345; *Sheridan* v. *Mayor, etc.*, 68 N. Y. 30.)

*J. Du Pratt White, Joseph M. Hartfield* and *Fisher A. Baker* for respondent. A bank certifying a check may stop payment of it because of a mistake, provided the holder of the check is not a holder for value, or has not changed his position by reason of the certification. (*Irving Bank* v. *Wetherald*, 36 N. Y. 335; *M. M. Bank* v. *T. T. W. Bank*, 60 App. Div. 205; 172 N. Y. 244; *Nat.*

*Park Bank* v. *S. F. Mfg. Co.*, 58 Hun, 81; *Rankin* v. *Colonial Bank*, 31 Misc. Rep. 227; Daniels on Neg. Inst. § 1608; Morse on Banks & Banking, § 419; *A. S. A. Bank* v. *Nat. City Bank*, 161 App. Div. 268.) A bank certifying a check does not warrant the genuineness of the title of the payee or holder, and in this case the payee and holder had no title to the check, and cannot enforce it. (*M. Nat. Bank* v. *Nat. C. Bank*, 59 N. Y. 67; *Clews* v. *Bank of N. Y. Nat. B. Assn.*, 89 N. Y. 419; *White* v. *Cont. Bank*, 64 N. Y. 316; *Cont. Nat. Bank* v. *Tradesmen's Bank*, 173 N. Y. 272.)

CARDOZO, J. The plaintiff, the Carnegie Trust Company, is insolvent and in liquidation. It was closed by the superintendent of banks on January 7, 1911. One of its correspondents was the German National Bank of Cincinnati, Ohio. It had sent checks or drafts to that bank for collection. On January 5, 1911, the bank in Cincinnati had collected $2,953.92. To remit the proceeds, it sent the plaintiff its check for that amount drawn on the defendant, the First National Bank of the city of New York. It did not know at that time that the plaintiff was insolvent. When it made the remittance, it had on deposit with the plaintiff in New York an amount largely in excess of the collections which it had made as the plaintiff's correspondent. The superintendent of banks, on taking possession of the plaintiff's assets, found in the mail the check for $2,953.92. He presented it to the defendant, and the defendant certified it. Later in the day the German National Bank of Cincinnati learned of the plaintiff's insolvency. It promptly telegraphed the defendant that payment of the check must be stopped. The defendant, having already certified the check, gave notice of these instructions to the superintendent of banks. It informed him that the bank in Cincinnati claimed the right to offset the check against its deposit with the trust company. The check was afterwards pre-

sented to the defendant for payment, and payment was refused. This action is brought on the defendant's contract of certification.

Two questions have been argued at our bar. The first is whether the German Bank in Cincinnati had the right before it made the remittance to apply the collections against its deposit with the plaintiff. The second is whether the failure of the bank in Cincinnati to take advantage of a right of set-off, entitles the defendant to refuse payment of a check which it has certified.

For the purpose of this appeal, we assume, though we do not find it necessary to hold, that the first of these questions should be answered in favor of the defendant. On the one side, it is insisted that the right to apply one liability in cancellation of the other may be deduced from the principles of equitable set-off (*Scott* v. *Armstrong*, 146 U. S. 499; *Hughitt* v. *Hayes*, 136 N. Y. 163), or if these are inadequate, from the existence of a banker's lien (*Joyce* v. *Auten*, 179 U. S. 591, 597; *Garrison* v. *Union Trust Co.*, 139 Mich. 392). On the other side, it is insisted that the bank held the drafts for collection only, as trustee or agent for the plaintiff (*National Park Bank* v. *Seaboard Bank*, 114 N. Y. 28; *Nat. Butchers & D. Bank* v. *Hubbell*, 117 N. Y. 384); that the rules of equitable set-off do not permit a trustee or agent to apply a claim in his own right in cancellation of his liability as a fiduciary (*Morris* v. *Windsor Trust Co.*, 213 N. Y. 27); and that the implication of a banker's lien is precluded by the course of dealing (*Matter of Northrup*, 159 Fed. Rep. 686; *Reynes* v. *Dumont*, 130 U. S. 354). The record is so meagre, and leaves the relation between the bank and the plaintiff so obscure, that unless the disposition of the appeal requires us to do so, we ought not to pass upon these conflicting claims of right. Conceding that the two liabilities were subject to cancellation, we are none the less of the opinion that the defense cannot prevail.

Whatever right the bank in Cincinnati may once have

had, either because of its lien, or by force of the rules of equitable set-off, to hold the collections as security for its deposit, was lost when the defendant certified the check. A new set of relations sprang up with that act. The drawer of the check was discharged from liability (*First Nat. Bank of Jersey City* v. *Leach*, 52 N. Y. 350; *Gallo* v. *Brooklyn Savings Bank*, 199 N. Y. 222, 228; Neg. Instr. L. sec. 324); the certification was equivalent to an acceptance (Neg. Instr. L. sec. 323); and the defendant engaged that it would pay the check according to the tenor of the acceptance to its lawful holder (Neg. Instr. L. sec. 112; *Meuer* v. *Phœnix Nat. Bank*, 94 App. Div. 331; 183 N. Y. 511). The defendant argues that the effect of the right of set-off was to destroy the plaintiff's title, but the argument will not hold. The plaintiff, after receiving the defendant's certification, had the legal title to a chose in action, and even though some equity remained in the bank in Cincinnati, the legal title was not divested. Delivery of the check had been made to a known payee, and by the act of certification a novation of liability had resulted. (*Meads* v. *Merchants Bank of Albany*, 25 N. Y. 143.) After that, the German National Bank had no longer any greater right to insist upon a set-off than it would have had after the payment of the check in cash. There is authority for the proposition that one who pays a debt in ignorance of the fact that a set-off is available, is not entitled to reclaim the payment, even in an action for money paid under mistake. That was said to be the law in *Franklin Bank* v. *Raymond* (3 Wend. 69, 73). A later case in the Circuit Court of Appeals involves a like ruling. (*Matter of Northrup*, 159 Fed. Rep. 686.) "I do not find any case," said MARCY, J., in *Franklin Bank* v. *Raymond* (*supra*), "where money paid on a subsisting demand has been recovered back on the ground that the person making the payment has subsequently discovered facts that show he had a set-off against the demand." This broad statement of the rule was, however, unneces-

20

sary to the decision, which may stand upon the ground that the defendant's retention of the money, in the circumstances there disclosed, was not against good conscience. In *Bize* v. *Dickason* (1 T. R. 285) Lord MANSFIELD permitted a recovery against an assignee in insolvency where a debtor, because of ignorance of a set-off, had made an excessive payment. The present case differs in some ways from any of those cited, for here the right of set-off was known, and all that was unknown was the occasion that made the exercise of the right expedient. (*Dambmann* v. *Schulting,* 75 N. Y. 55; *Southwick* v. *First N. Bank of Memphis,* 84 N. Y. 420, 434.) Whether any form of remedy is available to the bank in Cincinnati to repair the consequences of its mistake is, however, a question that we need not now determine. We think that whatever right it has, must be determined on the distribution of the plaintiff's assets, and is not available to this defendant as a defense to the acceptance. We find no authority for the proposition that a bank may resist the enforcement of its contract of certification in order to make a set-off available to its depositor. (*Corn Ex. Bank* v. *Farmers' Nat. Bank,* 118 N. Y. 443, 448; *Elliott* v. *Brady,* 192 N. Y. 221, 226; *Gillespie* v. *Torrance,* 25 N. Y. 306.) There is no analogy between such a case and cases where, because of forgery of the check or because of ignorance of the true state of its depositor's account, the action of the certifying bank is itself the product of mistake. (*Irving Bank* v. *Wetherald,* 36 N. Y. 335; *Mount Morris Bank* v. *Twenty-third Ward Bank,* 172 N. Y. 244.) In this case there has been no mistake that has influenced the defendant's conduct. Its promise was supported by a sufficient consideration. (*Nat. Park Bank* v. *Saitta,* 127 App. Div. 624; 196 N. Y. 548.) There was a consideration when we view the transaction as one between the plaintiff and the defendant. There was also a consideration when we view it as one between the plaintiff and the drawer, for

the plaintiff did not merely substitute the defendant as the primary debtor, but discharged the drawer altogether. The right to offset one debt against the other was lost in the act of payment. The debt that was thus discharged was a genuine one, and the existence of a set-off did not make the payment a gratuity. If the bank that made the payment has a cause of action for money paid under mistake, it must invoke that remedy directly. It cannot accomplish the result indirectly by inducing the defendant to repudiate the acceptance.

Any other conclusion would be destructive of the value and efficiency of certified checks. By common use such checks are treated for most purposes as the equivalent of cash (*White* v. *Eiseman*, 134 N. Y. 101, 107). It would be an unfortunate rule that would impair their ready acceptance in the transactions of commerce. If the holder of a check, after procuring it to be certified by a bank, may be required to litigate the question whether the maker of the check had a right of counterclaim or set-off, the transaction has not been safely closed until the cash has been collected. That has not heretofore been supposed to be true. In the words of PECKHAM, J., in *First Nat. Bank of Jersey City* v. *Leach* (52 N. Y. 350, 353): " The bank virtually says that check is good; we have the money of the drawer here ready to pay it. We will pay it now, if you will receive it. The holder says no, I will not take the money; you may certify the check and retain the money for me until this check is presented." If the bank may resist payment whenever the drawer has omitted to take advantage of a right of set-off, the holder's safety is illusory.

The judgment of the Appellate Division should be reversed, and that of the Trial Term affirmed, with costs in all courts.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, CUDDEBACK and MILLER, JJ., concur; WERNER, J., absent.

Judgment accordingly.