[No. 18457.   Department One.   March 27, 1924.]

OREGON IRON & STEEL COMPANY, *Appellant,* v. KELSO STATE BANK *et al., Respondents.*[1]

BANKS AND BANKING (23)—BILLS AND NOTES (6)—CHECKS—ACCEPTANCE—PAYMENT—LIABILITY OF BANK.   A check is irretrievably accepted under Rem. Comp. Stat., §§ 3453, 3522 and 3579, entitling the payee to payment in cash, where the bank received the check, charged it to the depositor's account, and cancelled and retained it and attempted to make payment by draft, which was refused; since the check is paid and ceases to exist, and it is immaterial that the check created an overdraft.

Appeal from a judgment of the superior court for Cowlitz county, Kirby, J., entered July 20, 1923, upon findings in favor of the defendants, in an action to enforce a claim against an insolvent bank, tried to the court.   Reversed.

*Fisk & McCarthy, Prescott W. Cookingham,* and *Leo J. Hanley,* for appellant.

*Miller, Wilkinson & Miller,* for respondents.

MACKINTOSH, J.—This action is here without any statement of facts and the only question is whether the findings of fact justify the conclusions of law and the judgment.   The findings, conclusions and judgment are as follows:

I.

"That the Oregon Iron & Steel Company, Ladd & Tilton Bank, Federal Reserve Bank of San Francisco, United States National Bank of Portland, and the Kelso State Bank of Kelso, Washington, are all corporations duly organized and existing.

II.

"That John P. Duke is the duly qualified and acting supervisor of banking of the state of Washington; that on the 17th day of March, 1921, the said Kelso State

[1]Reported in 224 Pac. 569.

Bank became unsound and insolvent and its assets were taken charge of under the banking laws of the state of Washington, and since that time it has been in liquidation and T. H. Adams is now in charge as the special deputy supervisor of banking liquidating the Kelso State Bank.

### III.

"That for a long time prior to the 17th day of March, 1921, and until the bank was taken in charge by the bank officials of the state of Washington, F. L. Stewart was the cashier and general manager of the said Kelso State Bank and had been its cashier in charge of the affairs of the bank and the managing officer thereof for a number of years previous thereto.

### IV.

"That on or about the 15th day of March, 1921, the said F. L. Stewart drew his personal check on the Kelso State Bank for the sum of $3,237.64, payable to the order of the Oregon Iron & Steel Company, the plaintiff herein; that said check was forwarded in due course of mail to the Oregon Iron & Steel Company at Portland, Oregon, and endorsed by it and delivered to the Ladd & Tilton Bank in Portland, Oregon, for collection, and was endorsed by the Ladd & Tilton Bank of Portland to the Federal Reserve Bank of San Francisco, Portland branch, for collection.

### V.

"That on or about the 16th day of March, 1921, the said Federal Reserve Bank presented to the Kelso State Bank items drawn on the Kelso State Bank aggregating $4,891.08, and that among the items so presented to said Kelso State Bank was the check drawn by the said F. L. Stewart and payable to the Oregon Iron & Steel Company, the plaintiff herein; that when said items were presented to said Kelso State Bank it issued its draft, No. 298, dated March 16, 1921, in the sum of $4,891.08, payable to the Portland branch of the Federal Reserve Bank and drawn on the United States National Bank of Portland.

## VI.

"That on March 17, 1921, said Federal Reserve Bank presented said draft to the United States National Bank at Portland and payment was refused and the draft returned marked 'bank closed' by the United States National Bank, and said draft was on March 18, 1921, protested for nonpayment and notice given to the officials in charge of the Kelso State Bank and the said draft was subsequently returned to the Kelso State Bank by the Federal Reserve Bank of San Francisco.

## VII.

"That at the time said check was drawn by the said F. L. Stewart he had no sufficient funds to pay the same and it constituted an overdraft to the amount of $3,164.38 and continued an overdraft in the same amount until the bank closed.

## VIII.

"That at said time and for a long time prior thereto the said Kelso State Bank was in an insolvent condition and unable to meet its liabilities and its condition was well known to the said F. L. Stewart.

## IX.

"That said draft was payable to the order of the Portland branch of the federal reserve bank at Portland and that upon its receipt by the said Federal Reserve Bank at Portland the said Federal Reserve Bank acting as agent for the plaintiff herein refused to accept the same or any part thereof, but repudiated the draft and returned the same to the said Kelso State Bank and notified the officers in charge of the bank of its refusal to accept the draft and said draft was never accepted by the Portland branch of the Federal Reserve Bank, either for itself or for the plaintiff, and was never accepted by the plaintiff, but plaintiff refused to accept the same.

## X.

"That at no time from the time the original check was issued by the said F. L. Stewart was there sufficient funds to the credit of the said F. L. Stewart to

pay said check or the draft referred to and they amounted to an overdraft in the sum of $3,164.38.

### Conclusions of Law:

"That at the time the check in question was issued by the said F. L. Stewart he had no funds to his credit with which to pay said check and the issuance of the same constituted an overdraft and was in violation of law;

"That at the time said draft was issued there were no funds to pay the same and it was issued in violation of law and was therefore void;

"That the plaintiff refused to accept the draft and it was never accepted or became a binding obligation against the Kelso State Bank;

"That plaintiff is not entitled to recover in this action and the defendant is entitled to a judgment of dismissal.

### Judgment:

"It is ordered and adjudged that plaintiff's action be dismissed and that defendant recover judgment for his costs."

The court having found that the draft given by the Kelso bank in payment of the check was repudiated and never accepted by the appellant, the appellant is bound by that finding, and it is, therefore, to be borne in mind that this is not an action against the respondent upon that draft. The theory upon which any judgment in favor of the appellant can be granted is that the respondent is liable by virtue of having accepted and honored the Stewart check.

The sections of the code applicable to the facts are: that portion of § 3453, Rem. Comp. Stat. [P. C. § 4133], reading as follows: "The acceptor by accepting the instrument engages that he will pay it according to the tenor of its acceptance   .   .   ." and that portion of § 3522, Rem. Comp. Stat. [P. C. § 4203], reading: "The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer." And

§ 3579, Rem. Comp. Stat. [P. C. §4260], as follows: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check."

The court found that the respondent accepted and honored the check, but that the appellant refused to accept the draft given as payment for the check, which the appellant had a right to do, for if the bank accepted the check, the obligation was then on the bank to pay the proceeds to the appellant in cash if the payee did not request some other form of payment. Some question is made that the findings do not show that the check was accepted. Finding number 7, however, clearly states that the bank accepted the Stewart check, because it is stated that the check constituted an overdraft and "continued an overdraft in the same amount until the bank closed." In order to constitute an overdraft the check must have been accepted by the bank and marked "paid" and the account of Stewart charged with the amount of the check. This is further clearly indicated by the fact that the draft was issued for the amount of the check and the check retained. These acts constituted an acceptance under the statute.

In *First Nat. Bank v. National Park Bank,* 100 Misc. Rep. 31, 165 N. Y. Supp. 15, the court said:

"By charging the account of the trust company with this check, the same has been paid, nothing more is left to be done, and the plaintiff was entitled to receive the proceeds of the check."

Under facts very similar to the facts of the case at bar the court, in *Consolidated Nat. Bank v. First Nat. Bank,* 120 App. Div. 538, 114 N. Y. Supp. 308, said:

"The check, when presented to the defendant, was paid by its acceptance by the defendant as valid, by marking the same paid, crediting the amount to the

account of the plaintiff, and charging it against the account of Davis & Company. As a matter of law, that closed the transaction without power of revocation. The defendant bank had become the debtor of the plaintiff's agent to the extent of the amount of the credit given, which was the amount of the check.''

This case was re-affirmed in *Consolidated Nat. Bank v. First Nat. Bank,* 199 N. Y. 516, 92 N. E. 1081.

The supreme court of the United States, in *National Bank v. Burkhardt,* 100 U. S. 686, said this concerning this question:

''When a check on itself is offered to a bank as a deposit, the bank has the option to accept or reject it, or to receive it upon such conditions as may be agreed upon. If it be rejected, there is no room for any doubt or question between the parties. If, on the other hand, the check is offered as a deposit and received as a deposit, there being no fraud and the check genuine, the parties are no less bound and concluded than in the former case. Neither can disavow or repudiate what has been done. The case is simply one of an executed contract. There are the requisite parties, the requisite consideration and the requisite concurrence and assent of the minds of those concerned. It was well said by an eminent Chief Justice: 'If there has ever been a doubt on this point there should be none hereafter.' *Oddie v. National City Bank of New York,* 45 N. Y. 735.''

The syllabus of the case of *Nineteenth Ward Bank v. First Nat. Bank of South Weymouth,* 184 Mass. 49, 67 N. E. 670, reads:

''Plaintiff sent to defendant bank for collection and remittance a properly indorsed note of a depositor of defendant, who had directed it to pay his notes. On the day for payment defendant's cashier, as such, drew his check to plaintiff's order for the amount of the proceeds, made a memorandum thereof on a block, wrote on the face of the note, in defendant's name, that it was paid and perforated it and put it in the files. He

was then notified of the depositor's insolvency. *Held,* that the note was already paid, nothing remaining, besides entries of records on the books, but to remit the proceeds.''

See, also, *American Nat. Bank v. Miller,* 229 U. S. 517; *Broad & Market Nat. Bank v. New York & E. R. Co.,* 102 Misc. Rep. 82, 168 N. Y. Supp. 149, and *Charnock v. Jones,* 22 S. D. 132, 115 N. W. 1072.

As soon as the bank had taken the check, marked it "paid" and charged the depositor's account with the amount of it, it thereby assented to the order of the maker of the check and became liable to the holder of the check for its amount, and by such action the maker of the check and all indorsers were relieved from liability. *Carnegie Trust Co. v. First Nat. Bank,* 213 N. Y. 301, 107 N. E. 693; *National Bank of Rolla v. First Nat. Bank of Salem,* 141 Mo. App. 719, 125 S. W. 513.

The check had ceased to exist as a check and there had been substituted for it the obligation and liability of the bank. See § 3579, Rem. Comp. Stat. [P. C. § 4260.]

It is claimed, however, that, because the court found that the acceptance of the check created an overdraft in the Stewart account, the bank is not, therefore, liable. The rule laid down by the authorities, however, is that the liability of the bank does not depend upon the condition of the account of the drawer of the check, upon the theory that, by accepting a check against an account in which there is not sufficient funds to meet the check, the bank thereby makes a loan to the drawer of the check, and that the duty is upon the bank in the first instance to determine whether the account was sufficient to meet the check, and that there is no such duty upon the holder of a check and the bank is estopped in any event, after having accepted, to then

say that, by its acceptance, the drawer's account was overdrawn.

This court, in *Spokane & Eastern Trust Co. v. Huff*, 63 Wash. 225, 115 Pac. 80, had the matter under consideration, and the syllabus states the conclusion of the court, to this effect:

"Where a bank paid a check drawn upon it under the mistaken belief that the drawer had funds there subject to check, it cannot recover the payment from the payee, since that would destroy the certainty pertaining to such transactions; and it is immaterial that the mistake was due to the confusion incident to paying the check after banking hours, as an accommodation, when the drawer's deposits had been withdrawn the same day."

In *First Nat. Bank of Denver v. Devenish*, 15 Colo. 229, 25 Pac. 177, it was said:

"They (the bank) were supposed to be informed of his financial standing, and certainly were supposed to know the condition of his account with them at the time of the presentation of the checks for payment. Banks are required, and for their own safety compelled, to know at all times the balance to the credit of each individual customer, and they accept and pay checks at their own risk and peril. If, from negligence or inattention to their own affairs, banks improvidently pay when the account of the customer is not in a condition to warrant it, and if by mistake a check is paid when the drawer has no funds, the bank must look to the customer for rectification, not to the party to whom the check was paid. The supposed mistake relied upon in argument is stated in the pleadings as follows: 'That such a bill of exchange was so executed and delivered as aforesaid, by defendant, under a mistake of fact, and that the said Caldwell did not then have, at the time of the making and the delivery of the said bill of exchange, in the hands of the defendant, funds to pay the checks for which said bill of exchange was given, and that defendant discovered said mistake at, to-wit: the hour of one o'clock on the afternoon of the

28th day of December, 1883. The character of the supposed mistake, as stated in the pleading and shown in evidence, was such as to preclude appellee from availing himself of it as a defense. It being the direct result of carelessness and inattention to his own affairs, there can be no relief at law, and even in equity, courts will seldom if ever, relieve a man from the result of a mistake attributable to negligence or want of diligence in his own affairs.' ''

See, also, *Manufacturers' Nat. Bank v. Swift*, 70 Md. 515, 17 Atl. 336; *Citizens' Bank of Norfolk v. Schwarzschild & Sultzberger Co.*, 109 Va. 539, 64 S. E. 954; *Boylston Nat. Bank v. Richardson*, 101 Mass. 287; *National Bank of New Jersey v. Berrall*, 70 N. J. L. 757, 58 Atl. 189.

Courts have even gone to the extent of holding that the mere making by the bank of an entry giving credit to the payee of the check closes the transaction. The check is in law paid and thereafter there can be no alteration or change in the rights of the parties without their mutual agreement. *Bryan v. First Nat. Bank of McKees Rocks*, 205 Pa. St. 7, 54 Atl. 480; *Bartley v. State*, 53 Neb. 310, 73 N. W. 744.

The supreme court of the United States, in *American Nat. Bank v. Miller, supra,* observed:

''There are some disadvantages of sending a check for collection directly to the bank on which it is drawn, but when such bank performs the dual function of collecting and crediting, the transaction is closed and, in the absence of fraud or mutual mistake, is equivalent to payment in the usual course.''

The circuit court of appeals for the eighth circuit, in *Security Nat. Bank v. Old Nat. Bank*, 241 Fed. 1, remarked:

''A bank, which honors and pays a note, draft, or check of one of its customers upon his order, in the mistaken belief that the credit balance of the customer

is larger than it in fact is, or in the futile hope or mistaken belief that checks or notes which the bank has credited to the account of that customer will be paid in the regular course of business, is estopped, as against the owner of such paid note, check, or draft, from revoking or avoiding such payment on account of such mistake or futile hope: (1) Because of the intolerable delay, uncertainty, and confusion that would result in commercial transactions, if the validity of such payments were to remain in doubt until such possible mistakes should be discovered and corrected; (2) because such a bank may know the state of its own accounts, and it can make such mistakes only through its own laxity or negligence, or its own assumption of the risk of future payments; and (3) because the owner of the note, check, or draft has no means of knowing the state of the customer's account. The acceptance of the check of the Implement Company on and to the Security Bank for $20,818.15, the charge of that amount by the bank to the Implement Company's account, its stamping of the 4 notes owned by the plaintiff 'Paid,' its surrender of those notes to their maker, the Implement Company, and the making and mailing of its draft, to the order of the plaintiff, to the plaintiff for the proceeds of the notes, less the bank's commission for their collection, by the bank on August 1, 1913, constituted an absolute payment of the 4 notes, which, as against the plaintiff, it could not revoke, and made it legally liable to pay its draft.''

In *Farmers Guaranty State Bank v. Burrus Mill & E. Co.*, 207 S. W. (Tex.) 400, the syllabus is to the following effect:

''Where the drawer of bill of exchange presents it to his bank which transmits it to defendant bank, which pays it by its cashier's check under an agreement with the drawee, incloses the remittance in an addressed and stamped envelope, and mails it, such action makes defendant's acceptance a finality, depriving both it and the drawee of the right to withdraw the acceptance given.''

From these authorities it would plainly appear that, after, the bank had received the check, charged the depositor's account, cancelled the check, retained its possession and attempted to make payment by draft, the check had been completely and irretrievably accepted, and that the duty was on the bank to make payment in cash to the drawee of the check upon his demand, and that the drawer was not obligated to accept the draft in payment.

The only argument advanced against this position is that the acceptance never became complete, for the reason that the drawee attempted to make payment by draft which was not accepted, and, to quote from respondents' brief, "the appellant is not now in a position to say that the bank should be bound by its action in recognizing the check and issuing a draft thereon, for the appellant refused to approve the bank's action in regard thereto, refused to accept the draft in place of the check and refused to ratify or to confirm the action of the bank in recognizing the check or in issuing the draft. The minds of the parties never met or concurred or united, either by conduct or otherwise, so as to complete the transaction and make it binding upon either party." The answer to this is that the law lays down the obligation of a bank to whom a check is presented, and that obligation is to pay in cash. If the drawer desires to have payment made in any other manner, of course that is a matter which he and the bank might agree upon, but the bank could not relieve itself of the obligation to pay in cash by forwarding a draft. As a matter of fact, the findings of fact do not justify the respondent's argument that the appellant repudiated the acceptance, which is the act which bound the respondent.

Some claim is also made that, by accepting a check which resulted in an overdraft of the Stewart account,

an illegal transaction was entered into, but there is nothing in the findings of fact to justify this, and if the matter is material, we must assume that proper arrangements had been made between the bank and Stewart in relation to his account. In any event, as already pointed out in the citation of authorities above, the appellant is not charged with the violation of a law nor with participating in an illegal transaction, as it knew nothing in regard to the Stewart account.

An interesting discussion of a subject very like the one involved in this case can be found in the recent decision of the United States supreme court in the case of *Federal Reserve Bank v. Malloy,* U. S. Adv. Ops. 1923-24, p. 288, decided February 18, 1924.

For the reasons stated, the judgment of the lower court is reversed with directions to allow and recognize the claim of the appellant.

MAIN, C. J., HOLCOMB, TOLMAN, and MITCHELL, JJ., concur.