[No. 20212. Department Two. April 18, 1927.]

LINCOLN COUNTY, *Respondent*, v. MARY A. GIBSON, *as Executor of the Estate of C. C. Gibson, Deceased, et al., Appellants.*[1]

[1] PAYMENT (7)—BY CHECK. A check issued in payment of an obligation is presumed to have been accepted as payment conditionally—upon condition of payment of the check when presented.

[2] SAME (7)—PAYMENT BY CHECK—PRESUMPTION OF PAYMENT. The presumption of payment of county warrants from the fact of their possession by the county is rebutted by proof that there had never been a payment of any kind.

[3] BANKS AND BANKING (23)—PAYMENT (7)—BY CHECK. The fact that a bank marked a check paid and forwarded it to a Federal reserve bank for credit does not constitute a payment of the check where the Federal reserve bank refused to accept the check or give credit because of want of funds of the drawer.

[4] BANKS AND BANKING (23)—PAYMENT (7)—BY CHECK. Where a county drew a check upon a bank which did not at any time have sufficient funds to pay the same, and was therefore insolvent, there can be no liability upon the part of a collecting bank on account of negligence in failing to give notice of the dishonor of and refusal to give credit for the check.

[5] INTEREST (20)—TIME FROM WHICH RUNS. Where the amount of a county treasurer's shortage was known and demand made therefor, the sureties on his official bond are liable for interest from the date of the demand.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered March 31, 1926, upon findings in favor of the plaintiff, in an action upon the bond of a county treasurer, tried to the court. Affirmed.

*Frank Funkhouser, White & Cunningham,* and *Graves, Kizer & Graves,* for appellants.

*Joseph H. Johnston, Roy C. Fox,* and *Pettijohn & McCallum,* for respondent.

[1] Reported in 255 Pac. 119.

ASKREN, J.—This action was brought to recover from the estate of C. C. Gibson, formerly treasurer of Lincoln county, and from his official bondsmen the sum of $26,671.05. Upon trial the court entered judgment for the county, and the defendants have appealed.

No error is assigned upon any of the items making up the judgment save one of $6,402.44. The facts concerning it are as follows: The First State Bank of Kellogg, Idaho, being the owner of certain Lincoln county warrants called for payment, sent them to the county treasurer Gibson, who marked them paid and presented them to the county auditor who also marked them paid. The county treasurer then issued his check in favor of the Kellogg bank in the sum of $6,402.44, drawn on the First National Bank of Harrington, and mailed it in the ordinary course of business. This check was received by the Kellogg bank and re-mailed by it to the Exchange National Bank of Spokane on July 2. It was received by the Exchange National Bank on July 7 (three holidays having intervened), and by that bank sent to the Federal Reserve Bank, Spokane branch, on the same day. That bank thereupon sent the check with others drawn on the same bank to the First National Bank of Harrington. The Harrington bank marked the check paid, and sent a slip to the Federal Reserve Bank showing that they had charged the amount to that bank. At the time this was done, the Harrington bank did not have sufficient funds on deposit with the Federal Reserve Bank, and that bank refused to extend credit or permit the amount to be charged against it. Consequently, having received nothing from the Harrington bank, it never paid the Exchange National Bank, nor it in turn the Kellogg bank. Within a few days, the Harrington bank closed

its doors, and Lincoln county suffered a large loss for which it brought this suit.

It will be observed from the recitation of the peregrinations of this check that it produced much bookkeeping, but no cash.

[1] It is first contended by appellants that the giving of the check by Gibson to the Kellogg bank constituted payment.

The argument upon this point is varied. It is said that, under the pleadings, the acceptance of the check by the Kellogg bank was payment, because there was no denial of the statement in the affirmative defense of the bonding company that the check was accepted "in payment of" the obligation. But these words must be construed in their ordinary use, and with reference to the rest of the pleadings, and an examination thereof satisfies us that the only deduction that can be made is that the check was issued in payment of the obligation, but was not to be considered as an unconditional payment, and to be binding upon presentation whether the check was dishonored or not. This comports with the general rule that all payments of this character are presumed to be conditional payments, i. e., conditional upon the payment of the check when presented to the bank.

[2] Next it is claimed that, since the county has possession of the warrants, the rule to be applied is that, whenever a debtor is found in possession of the written evidence of the debt, the presumption arises that the debt has been paid. On this basis, it is argued that the county has failed to rebut the presumption. But we cannot so conclude. It has shown that there never has been a payment of any kind to the Kellogg bank; but more of this with reference to the next assignment of error, which appears to be the chief complaint of appellant.

[3]   In this assignment it is urged that the facts developed show payment. To understand this claim, a further statement of the dealings between the Federal Reserve Bank and the Harrington bank is necessary. It appears that the Federal Reserve Bank, whenever it sent checks to the Harrington bank, enclosed with them an itemized statement called a cash letter, and an authorization which described the contents of the cash letter. Whenever the bank received this letter and the checks, it had the right to sign the authorization and return it to the Federal Reserve Bank, and have the amount thereof charged on the books of that bank against the balance there to the credit of the Harrington bank. The Harrington bank in this case signed the authorization, but the Federal Reserve Bank refused to allow the credit, because at that time there was insufficient funds to the credit of the Harrington bank. Appellant has argued that, because the Harrington bank marked the check paid, that thereby payment was made. But it must be remembered that it could only pay this check by the delivery to the Federal Reserve Bank of cash, or by the acceptance by that bank of an order drawn on it. The attempt was made to pay by drawing on that bank, but as we have seen this was unsuccessful.

[4]   Some argument is made upon the theory that, since the Federal Reserve Bank did not immediately notify the Harrington bank of its non-acceptance of the attempt to charge it with the check, it must be construed as payment. But this point could only be beneficial if by reason of negligence in failing to notify immediately there was a loss occasioned. Nothing of that kind is shown here. The same result should be applied to the claim that the check should have been sent to the other bank at Harrington, the state bank,

and that to send the check direct to the bank on which it was drawn was negligence. Conceding that it would be negligence to send it to the bank on which it was drawn, recovery can be had only if the check could have been collected by the state bank. The record shows conclusively that the First National Bank at no time after the check could have been presented had on hand more than approximately one-half the amount of cash necessary to pay the check, and was therefore insolvent. Therefore, if negligence were shown no damage resulted therefrom.

This case, because of its mass of exhibits and the tracing of the check through so many different hands, has assumed a complicated air. But stripped of all its accumulations this single fact remains: The county treasurer drew a check in payment of the warrants on the First National Bank of Harrington. At that time the bank was insolvent and did not have funds with which to pay the check; it never has paid the check and the Bank of Kellogg never has received the money for it. Under these circumstances we find ourselves unable to follow the ingenuity of counsel to the point of holding that the First National Bank, without paying in cash, successfully pledging its credit or being a dollar worse off has by a process of bookkeeping made payment therefor.

Appellant contends that we have adopted the rule that a bank which charges the checks drawn on it to the account of the drawer has thereby made payment, and by such action relieved the maker of the check and indorsers from liability. Two cases are cited to this proposition. The first is *Oregon Iron & Steel Co. v. Kelso State Bank,* 129 Wash. 109, 224 Pac. 569, 38 A. L. R. 178, where one Stewart, the cashier of the defendant bank, issued to the plaintiff his personal check in

payment of the bill. This check was presented to the bank, and although Stewart did not have that amount of money the bank marked the check paid, and issued its draft therefor, drawn on the Federal Reserve Bank of Portland. The Federal Reserve Bank refused to accept the draft because the Kelso Bank was insolvent. The holder of the draft then sued the bank on the draft on the theory that, having issued its draft therefor, it admitted that Stewart's check was good for the face thereof, and became liable for the payment. We held the bank liable, and in doing so said:

"As soon as the bank had taken the check, marked it 'paid' and charged the depositor's account with the amount of it, it thereby assented to the order of the maker of the check and became liable to the holder of the check for its amount, and by such action the maker of the check and all indorsers were relieved from liability. *Carnegie Trust Co. v. First Nat. Bank,* 213 N. Y. 301, 107 N. E. 693; *National Bank of Rolla v. First Nat. Bank of Salem,* 14 Mo. App. 719, 125 S. W. 513.

"The check had ceased to exist as a check and there had been substituted for it the obligation and liability of the bank."

In the second case, *First National Bank v. Commercial Bank & Trust Co.,* 137 Wash. 335, 242 Pac. 356, the facts were that the Bank of Brewster had sent to the Commercial Bank of Wenatchee for collection checks drawn on the Bridgeport bank. The Bridgeport bank, upon receiving the checks, issued its draft drawn on a Seattle bank. The Wenatchee bank forwarded the draft to Seattle, but before its arrival there the Bridgeport bank became insolvent and payment was refused. The Brewster bank then sued the Wenatchee bank upon the ground that its failure to exact money from the Bridgeport bank caused the loss and rendered it liable. We there said upon the authority of *Oregon Iron & Steel Co. v. Kelso State Bank, supra:*

"The checks, as we have before stated, when they were forwarded to the Bridgeport bank, were charged by that bank to the accounts of the several drawers, and were either returned or held for return to them. This was a payment of the checks as between the drawers and the several interested banks. Being such a payment, there could be no recourse upon the drawers."

It seems to us, however, that these two cases are distinguishable from the case at bar. In the first case the Oregon Iron & Steel Company had a right to accept the draft of the Kelso bank in payment of the check. By its act in bringing suit it admitted that it had accepted the draft in payment and that it looked to the bank alone for payment. Here, there was no acceptance by the Kellogg bank, or by any other bank acting for it, of any draft or other medium in payment. Indeed, the only bank to which the Harrington bank offered payment was the Federal Reserve Bank and it refused to accept the kind of payment offered. Quite a different question would have been presented in the *Oregon Iron Company* case if the Kelso bank, upon presentation of the check, had offered to pay the collecting bank with a draft and the bank refused to accept it. Under that state of facts certainly the collecting bank could refuse to allow the Kelso bank to keep the check and the maker could have been sued thereon.

The second case also is distinguishable. The point there determined was that the Wenatchee bank was guilty of negligence in accepting a draft in place of cash for the forwarded checks. But suppose the Wenatchee bank refused to accept the draft and demanded the cash, could anyone successfully contend that the Bridgeport bank could make payment so as to relieve the maker by charging up the check to the maker's account, but without paying as demanded? Certainly, without delivery to the collecting bank of something

which it was willing to and did accept, the Bridgeport bank would have no right to either mark the check paid or charge it to the maker's account.

Many other authorities are cited, but we think our view of the facts prevents them from being authority upon the point here presented.

[5] Contention is also made that the court erred in allowing interest on the amount of the treasurer's shortage from the date demand was made by the county commissioners. It is argued that the failure of Gibson to comply with the order was not a breach of the bond. We are unable to see why the bond given to protect the county should not be liable as for a breach when Gibson was found to have a shortage in his accounts. The moment the shortage was ascertained and demand made therefor Gibson was liable to make good. If he was liable, we see no reason why the bond was not also liable.

Judgment affirmed.

Mackintosh, C. J., Parker, and Tolman, JJ., concur.