[No. 27646.  Department One.  February 6, 1940.]

GRAND LODGE OF THE SCANDINAVIAN FRATERNITY OF
AMERICA, DISTRICT No. 7, *Respondent,* v. UNITED
STATES FIDELITY AND GUARANTY
COMPANY, *Appellant.*[1]

[1]Reported in 98 P. (2d) 971.

R. E. Lowe, for appellant.

Clarke & Eklow, for respondent.

MILLARD, J.—Plaintiff, a Montana corporation and one of the district grand lodges of the Scandinavian Fraternity of America, the supreme lodge of which is an Ohio corporation, brought this action as a beneficiary on a fidelity bond issued by defendant in favor of the Scandinavian Fraternity of America to recover a loss sustained by reason of embezzlement of its funds by its treasurer. Defendant answered, admitting execution of fidelity bond in favor of the Scandinavian Fraternity of America, but denied that the bond was for the benefit of any other person, and affirmatively pleaded in bar of the action breach of a condition precedent in the failure of plaintiff to audit and verify the account of its treasurer as required by an agreement supplemental to the original contract. The cause was tried to the court, which found that plaintiff is a beneficiary under the bond in question; that it fulfilled all of the terms and conditions required by the bond and is entitled to recover for loss sustained by reason of embezzlement of its funds by its treasurer. Judgment was entered accordingly. Defendant appealed.

The facts are as follows:

July 1, 1932, appellant, "a corporation duly incorporated under the laws of the State of Maryland," executed as surety "to and in favor of the Scandinavian Fraternity of America of Boston, Mass., hereinafter called the 'Order,'" an indemnity bond in the amount

of fifty-two thousand dollars, which bond further recites:

"THAT THE ORDER desires suretyship for certain officials, known as Secretarys, Treasurers and Trustees, charged with the custody of moneys, funds and personal property of the Order, the titles of which positions occupied by said officers or their successors and the amount for which each position is specifically guaranteed appear in a schedule issued by the Surety, and which relates to and is hereby made a part of this bond, and said Order may hereafter request like suretyship of the Surety, subject to the conditions hereof, for other such officials or positions.

"Now, THEREFORE, In consideration of the payment of a certain agreed premium per annum in advance at the rates hereinafter stated, to wit:
- - - Two HUNDRED THIRTY-FOUR & 00/100 - - DOLLARS the Surety agrees to pay to the Order, at the Home Office of the Surety in the City of Baltimore, such loss of moneys, bullion, funds, valuable securities, or other personal property of the Order, as the Order may sustain by reason of any *Act* or *Acts* of *Fraud* or *Dishonesty,* including *Forgery, Theft, Embezzlement* or *Wrongful Abstraction* on the part of any such official, not in any event exceeding the amount of suretyship set opposite such position."

In addition to the foregoing, the contract of suretyship contains various qualifications and explanations providing for termination of the contract, changes because of the election, appointment, or substitution of a successor to any official covered by the bond, and various other provisions. This "schedule bond" names appellant corporation as the surety and designates the Scandinavian Fraternity of America as the "order" which desires suretyship for certain officials as recited above. In the list, attached to the schedule bond, of employees of the "Scandinavian Fraternity of America" guaranteed by appellant under the bond are the secretary and treasurer of each of seven district lodges

and the treasurer and trustees of district lodge No. 6, Scandinavian Fraternity of America, Building Association. The bond of the secretary of respondent district lodge No. 7 is in the amount of one thousand dollars, for which the annual premium is $4.50. The indemnity against loss sustained by wrongful acts of the treasurer of district lodge No. 7 is in the amount of six thousand dollars, on which the annual premium is $27.00.

Under paragraph 6 of the bond, the suretyship for the positions designated in the schedule was considered continuously in force upon payment of the annual premium without being extended from year to year by any stipulation executed by the surety. The foregoing bond, on which this action was brought, was continued from year to year and covered the secretary and treasurer of each of seven of the district lodges and the treasurer and trustees of a building association of one of the district lodges of the Scandinavian Fraternity of America.

January 1, 1932, the Scandinavian Fraternity of America purchased from appellant another fidelity bond, which it continued from year to year by payment of the annual premium. That bond is in the amount of $139,100, and covers the financial secretary, treasurer, and trustees of each of the Fraternity's local lodges as shown by the schedule attached to the bond. The local lodges were each assessed, according to the schedule attached to the bond, its proportion of the total annual premium of $625.96. This bond is, excepting date of execution, officials covered, and amount of indemnity, the same as the bond first described.

September 1, 1932, the Scandinavian Fraternity of America, which is called the "order" in the third bond as it is so designated in the other two bonds, purchased from appellant a fidelity bond in the amount of twenty

thousand dollars, which schedule bond covered the supreme lodge officers—the supreme secretary and supreme treasurer—for which an annual premium of ninety dollars was paid. The aggregate annual premium on the three bonds was $949.96.

The secretary of the supreme lodge notified the secretary of respondent grand lodge of the amount of premium due from respondent for its proportion ($4.50 to cover the secretary and $27 to cover the treasurer) of the annual premium. An order was drawn by respondent's secretary, which required respondent's treasurer to pay to the supreme lodge of the Scandinavian Fraternity of America the amount due. Respondent's treasurer paid it by check, and each order for the payment bears the signature of the treasurer of the supreme lodge showing that the supreme lodge received payment from the respondent of respondent's proportion of the annual premium due to appellant.

Attached to the bond on which this action is based is a "rider" dated October 28, 1935, which makes an annual audit a condition precedent to recovery on the bond. Carl P. Johnson, secretary of the supreme lodge of the Scandinavian Fraternity of America, signed that rider acknowledging acceptance thereof November 4, 1935. Respondent never authorized the supreme lodge of the Scandinavian Fraternity of America or the appellant to make any changes in the terms of the bond. Respondent never received notice, either from appellant or the supreme lodge, of the existence of the "rider;" in fact, respondent did not learn of the existence of the "rider" until early in 1938, after the loss had occurred.

From May 1, 1935, to July 1, 1937, respondent did not have in its possession any funds belonging to the supreme lodge, which has its own secretary and treasurer. At the bi-annual convention of respondent in

June, 1935, the accounts of respondent's treasurer to the close of the fiscal year on May 31, 1935, were audited and found to be correct. By June 30, 1935, the treasurer was short in excess of eight hundred dollars, and that shortage increased until the total amount of the funds embezzled by the treasurer amounted to $3,-459.33. All premiums were paid to date on this bond on which this action was brought.

■■ Counsel for appellant contends that the respondent is an entirely different organization—incorporated in the state of Montana—than the Scandinavian Fraternity of America, which is the only named beneficiary in the bond on which this action is bottomed; therefore, respondent is not entitled to recovery on the bond because one of its officials, who is named, in the schedule to the bond, defaulted in his duties to the respondent, as that defaulting official at no time misappropriated any moneys belonging to the Scandinavian Fraternity of America, the beneficiary under the bond. It is insisted that "the question then involved is whether or not a third party has a right of action on a fidelity bond to recover a loss sustained by the third party, plaintiff."

The only reasonable inference from the facts before us is that the bond in question was written at the instance of the fraternal society as a whole. While the surety is described in the bond as a corporation duly incorporated under the laws of Maryland, there is an absence of such description of the Scandinavian Fraternity of America. It is designated in the bond as an "order." The sense in which the term is employed is patent.

The supreme lodge of the fraternal society is an Ohio corporation, which has a supreme secretary and a supreme treasurer, who are bonded in the total sum of twenty thousand dollars. The supreme lodge re-

ceives an income of fifteen cents *per capita,* which is collected by the district grand lodges of the society April 30th of each year from the local lodges over which the grand lodges have jurisdiction. The local lodges within the jurisdiction of respondent district grand lodge are located in Montana, Washington, Idaho, and British Columbia. That is, the district grand lodge simply owes the supreme lodge on a designated date a debt equal to fifteen cents for each member within the jurisdiction of that grand lodge.

An officer of a district lodge could not embezzle funds of the supreme lodge; he could only embezzle funds of his particular district grand lodge. Such misappropriation could cause loss to only that officer's district grand lodge. Obviously, the bond on which this action is based is for the benefit of the various district lodges in the amounts and covering the officers stated in the bond itself.

The premium on the bond was paid annually by the society's supreme lodge secretary, who sent a notice in advance to the district grand lodges respecting their respective proportions of the premium, collected same, and remitted the entire premium to appellant. It is not denied that the bond was in good standing at the time the loss occurred.

Additional evidence, besides specifically naming the district grand lodges in the schedule attached to the bond, that the parties to the bond intended that the district grand lodges were to be beneficiaries under the bond, are two other bonds, described above, with appellant. One bonds the secretary and treasurer of the supreme lodge and one bonds the officers of eighty-eight local lodges in various amounts. It is evident that the supreme lodge is the beneficiary in the first bond, and the various lodges are the beneficiaries in the second bond.

The trial court aptly observed:

"The U. S. Fidelity & Guaranty Company has been carrying these bonds for a number of years according to the testimony. They, I think, could not be deemed not to know the organization of this great fraternity. They have been dealing with it and executing these separate bonds and have been providing these schedules and recognizing them all the way through, and I think it could not within any reason be held doubtful that they know where the premiums come from. Not only do they know where they come from but they receive them, and have received them, in large amounts from the subordinate lodges. I think it must be deemed to know what the organization of the supreme lodge is and how it functions; that the only moneys which it individually would be required to have guaranteed would be the moneys coming into the hands of its own officers at its headquarters; and that it could not consequently be interested in having the district and local lodges over the country pay these premiums running into large amounts over these long periods of time without understanding that the purpose of the payments was to secure indemnification for losses due to dishonesty or negligence on the part of the officers of the district and local lodges respectively. I think that those features of case differentiate it from the cases that counsel for the defendant has been discussing.

"And then, we have also the fact that these officials are named in the bonds, that is, the name of the office is specifically stated, and in the case of the local lodges, the names of the offices which are to be covered by the bond are also given; so that the designation and description of the lodge itself and the designation of the officers whose fidelity is guaranteed by this company are made a part of the contract and are well known to the company. I can't have any question that the company knew beyond doubt what its obligations were, and it was taking compensation according to rates and schedules prepared by itself in sufficient amount to make it good business. It must have found it good business because it has been carrying it for a good long period of time."

We are committed to the rule that, when one person, for valuable consideration, contracts with another to perform some act for the benefit of the third person, the third person, who would enjoy the benefit of the act, may maintain an action for the breach of such contract. *Zioncheck v. Hepden,* 144 Wash. 272, 257 Pac. 835; *Lian v. Huglen,* 141 Wash. 369, 251 Pac. 585. See, also, 81 A. L. R. 1279.

Under our statute (Rem. Rev. Stat., § 179 [P. C. § 8255]) which provides that, except as is otherwise provided, every action shall be prosecuted in the name of the real party in interest, where a person makes a promise to another for the benefit of a third person the latter can maintain an action on the contract in his own name as the real party in interest.

The question whether a contract is made for the benefit of a third person is one of construction. The intention of the parties in this respect is determined by the terms of the contract as a whole construed in the light of the circumstances under which it was made. Ordinarily, it is sufficient if the contract was evidently made for the benefit of the third person. Where the contract between the first party and the second party was entered into for the benefit of others, and where it appears that such benefit must be the direct result of performance and so within the contemplation of the parties, the third persons may enforce the contract, as such third persons are not incidental beneficiaries without rights under such contract. 12 Am. Jur. 831-832.

We are in accord with the rule announced in *Blyth-Fargo Co. v. Free,* 46 Utah 233, 148 Pac. 427, cited by counsel for appellant, to the effect that, in the determination of the meaning of a written contract, the primary factor is to ascertain the intention of the parties, and that intention is, largely, to be ascertained from

the language employed by them. Our determination of the question presented by this appeal is not out of harmony with the argument that a surety has the right to stand strictly on the expressed terms of its contract of suretyship and to insist that it be not held responsible for any liability or obligation not directly expressed within the contract. When, however, the intention of the parties, as expressed in such a contract, is ascertained, the contract, with such ascertained intention, should be given effect conformably to such ascertained intent of the parties. The rule governing the construction of bonds is as follows:

"In construing an instrument under seal, although the courts generally adhere closely to the letter, the prevailing rule allows a court to place itself in the position of the contracting parties and to consider, in view of all the facts and circumstances surrounding the execution of the instrument, what the parties intended. In the event the intention of the parties is manifest, such intent must control in the interpretation of the instrument, regardless of inapt expressions or mere technical rules of construction. It is proper to consider the state of the parties and the property at the time the bond was given, and determine from that instrument in its entirety and the whole condition, the purpose for which it was given, without rejecting any word, if consistent effect can be given to it. Thus, an omission in the bond which renders it meaningless may be supplied by reference to the whole instrument whereby the intention of the parties can be thus ascertained. Similarly, where by error the condition in the bond is so drawn as to lack definite meaning, it may be read in the light of the evident intention of the parties. . . .

"With respect to the construction of fidelity bonds, it has been repeatedly held that where the instrument is reasonably susceptible of two constructions, one favorable to the insured, and one favorable to the insurer, that construction will be adopted which favors the liability of the insurer for the act or default in

question. At the same time, however, it should be noted that the liability of a surety is not to extend, by implication, beyond the terms of his contract." 8 Am. Jur. 722, § 37.

If the bond on which this action is brought is read in its entirety and in the light of the fact that the district lodge officers are expressly mentioned, that respondent district grand lodge paid its proportion of the consideration, that there were three bonds protecting all three types of lodges, and that the "Scandinavian Fraternity of America" would suffer no money damages (this "order" also filed a disclaimer) by the defalcation of the district lodge officers, the conclusion is not only irresistible that the parties intended this bond to be for the benefit of the district grand lodges, but that the respondent and the other district grand lodges are the second parties to, and direct beneficiaries of, the bond.

Counsel for appellant next contends that the rider executed by the appellant, which was accepted by the supreme lodge, forecloses any right of the respondent to recovery on the bond, inasmuch as respondent failed to make the annual audit which is a condition precedent to right of recovery.

The rider, reading as follows, requiring an annual audit of the accounts of respondent's treasurer, was never accepted, authorized, or ratified by respondent:

"That as a condition precedent to recovery hereunder the Order shall make, or cause to be made, a careful inspection and audit of the books and accounts, including complete verification of all securities and bank balances, pertaining to each position covered hereunder at least once in every twelve months while this bond is in force."

The bond on which this action was brought was effective July 1, 1932. The annual premium due July

1, 1935, was paid or the bond would have been cancelled. The bond does not require an annual audit of the treasurer's books and accounts. The rider which requires an annual audit is dated October 28, 1935. It was signed by Carl P. Johnson, supreme secretary of the supreme lodge of the Scandinavian Fraternity of America, November 4, 1935. As before stated, the premium for the year July 1, 1935, to July 1, 1936, was paid prior to this date. No notice was ever given to respondent of this rider, nor did respondent ever authorize the supreme lodge or its supreme secretary to accept a rider or to change the terms of the bond in any way. Not until discovery in June, 1937, of defalcation of its treasurer, was respondent possessed of any knowledge of the rider or its contents.

If respondent were a third party beneficiary under the bond, the supreme lodge and the appellant who entered into the contract for the benefit of respondent could not rescind or modify that contract without respondent's consent so as to deprive respondent of its rights thereunder. 81 A. L. R., 1294; 13 C. J. 602, § 625; 12 Am. Jur. 844, § 291. Of course, as a party to the contract and a beneficiary thereunder, neither the surety nor the supreme lodge, without the consent of the respondent, could modify the contract.

It is equally plain that there was no consideration for the agreement adding to the terms of the existing bond. In order to modify the bond, there must be an agreement to modify, supported by consideration. Neither of the parties to the bond had the right to modify the bond without the consent of the other party or parties to that contract. 32 C. J. 1142, § 250.

The rider purporting to modify the bond provides that the following language shall be deleted from the bond:

"Any act or acts of Fraud or Dishonesty including Forgery, Theft, Embezzlement or Wrongful Abstraction,"

and the substitution, in lieu of that language, of the following:

"Larceny, Embezzlement, Theft, Forgery, Misappropriation, Wrongful Abstraction, Willful Misapplication, or any other act of Fraud or Dishonesty committed by any officer or employe while this bond is in force as to such officer or employe."

We do not read the rider with the same understanding thereof as counsel for appellant contends for it—that it extends the appellant surety's obligation to cover things not included in the original bond. There was no compensating advantage to respondent for the added condition precedent to recovery of annual audit of the books and accounts of respondent's treasurer. We employ the following language from the opinion in *Main St. & A. P. R. Co. v. Los Angeles Traction Co.,* 129 Cal. 301, 305, 61 Pac. 937, 938, as apt:

"There can be no doubt of the principle contended for by the appellant that an agreement adding to the terms of an existing agreement between the same parties, and by which new and onerous terms are imposed upon one of the parties without any compensating advantage, requires a consideration to support it."

█ Counsel for appellant next complains of the allowance of interest prior to judgment.

Respondent alleged a total embezzlement of $4,029.35, conceded a credit of $550.65, hence claimed recovery for a total loss of $3,478.70. The embezzlements covered a period of approximately three years to October, 1937. This action was commenced May 6, 1938. Judgment was entered February 27, 1939, awarding recovery in the amount of $3,459.33, in favor of respondent. Upon that recovery, which was only

$19.37 less than the amount respondent claimed to be due, the trial court allowed interest from September 5, 1937.

The respondent is entitled, under the contract, to interest on its loss after the expiration of the two calendar months within which the appellant surety may make examination and payment. Within ten days, as the bond provides, after discovery June 24, 1937, of the loss, written notice of loss was given to the surety. The court allowed interest from September 5, 1937, which is sixty days after July 5, 1937, the date that appellant surety denied liability and refused to make payment.

The trial court correctly awarded interest, as the amount due was capable of ascertainment by mere computation. A controlling authority is *Kies v. Wilkinson*, 114 Wash. 89, 194 Pac. 582, 12 A. L. R. 833. That was an action against a county clerk for wrongfully withdrawing a deposit from an insolvent bank, in which the plaintiff sought recovery of $3,502.48. Credits were allowed which reduced recovery to $2,802, on which interest was made payable by the judgment from date of the wrongful withdrawal. We said:

· "Upon the question of interest, raised by the defendant's cross-appeal, it may be admitted that, as a general rule, unliquidated damages do not bear interest, especially in cases where the amount cannot be calculated or ascertained before judgment; but we here have a demand for a known specific amount, i. e., the sum wrongfully obtained, which may be lessened by the facts then existing and capable of ascertainment as to the financial condition of the bank, and we think the facts in this case bring it within the rule laid down in *Gray v. Reeves*, 69 Wash. 374, 125 Pac. 162; *Eilers Music House v. Hopkins*, 73 Wash. 281, 131 Pac. 838, and *Sweeney v. Lewis Const. Co.*, 74 Wash. 303, 133 Pac. 441."

See, also, *Daniel v. Daniel,* 116 Wash. 82, 198 Pac. 728, 27 A. L. R. 177, and *Lincoln County v. Gibson,* 143 Wash. 372, 255 Pac. 119.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.

